IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; ANTHONY ALLEN; and STEPHANIE ANTHONY | § § § § § § § § | |
| *Plaintiffs,* | § § | CASE NO. _____ |
| vs. | § § § | |
| STATE OF LOUISIANA; and R. KYLE ARDOIN, in his capacity as Secretary of State of Louisiana, | § § § § | |
| *Defendants.* | § § | |

ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PRELIMINARY STATEMENT

1.      The Louisiana Supreme Court ("*Supreme Court*") is the highest court in the State. It is the final authority on questions of Louisiana civil and criminal law and renders enormously consequential decisions that profoundly affect the lives of all Louisianans.

2.      Although the voting-age population of Louisiana is approximately 30% African American, African Americans comprise a majority in only one of the seven Supreme Court electoral districts (i.e. 14% of districts). Six of the seven electoral districts for the Supreme Court are majority-white. As a result of the demographics of those districts and racially polarized voting, African Americans have been prevented from equal participation in the election of justices to the Court.

1

3. Louisiana has never had more than one African American justice at a time on its Supreme Court. Although Supreme Court justices have been elected in Louisiana since 1904, Louisiana has had only two African-American justices in its history. Both were elected from the sole majority-black district in the State – a district created as a result of voting rights litigation.

4. Louisiana's African-American population and its voting-age population are sufficiently large and geographically compact to constitute a majority in two fairly drawn, constitutional single-member districts for the Supreme Court; the State's African Americans are politically cohesive; and the State's white voting-age majority votes sufficiently as a bloc to enable it to defeat African-American voters' preferred candidates in six of Louisiana's seven Supreme Court districts. Because of these circumstances, as well as the historical, socioeconomic, and electoral conditions of Louisiana, the Supreme Court districts as currently drawn violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("*Section 2*"). *Thornburg v. Gingles*, 478 U.S. 30 (1986).

5. For these reasons, Plaintiffs request that this Court (a) declare that the current single-member districts for the Louisiana Supreme Court violate Section 2 of the Voting Rights Act, (b) enjoin the further use of the current Supreme Court districts, and (c) require the State to redraw the Louisiana Supreme Court districts so that future elections can be conducted in compliance with the Constitution of the United States and the Voting Rights Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to (a) 28 U.S.C. § 1343(a), because this action seeks to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Voting Rights Act; and (b) 28 U.S.C. § 1331, because this action arises under the laws of the United States.

7.    This Court has jurisdiction to grant both declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

8.    This Court has personal jurisdiction over the Defendants.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**THE PARTIES**

A.    **The Plaintiffs**

10.    Plaintiff LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("*Louisiana NAACP*") is a state subsidiary of the National Association for the Advancement of Colored People, Inc. The Louisiana NAACP is the oldest and one of the most significant civil rights organizations in Louisiana, and it works to ensure the political, educational, social, and economic equality of African Americans and all other Americans. Two central goals of the Louisiana NAACP are to eliminate racial discrimination in the democratic process, and to enforce federal laws and constitutional provisions securing voting rights. Toward those ends, the Louisiana NAACP has participated in lawsuits to protect the right to vote, regularly engages in efforts to register and educate African-American voters, and encourages African Americans to engage in the political process by turning out to vote on Election Day. The mission of the Louisiana NAACP is frustrated by the current Supreme Court districts, which inhibit the organization's ability to fulfill its objectives, including the promotion of political equality for black voters.

11.    The Louisiana NAACP has members throughout the State, including members whose votes are unlawfully diluted by the current Supreme Court districts and whose injury would be redressed by the creation of a second majority-black district in the State.

12.     Plaintiff ANTHONY ALLEN is an adult African-American United States citizen who is a resident of and a registered voter in East Baton Rouge Parish, Louisiana. As a result of the demographics of his Supreme Court district and racially polarized voting, Mr. Allen's vote is unlawfully diluted. A majority-black district including Mr. Allen's home could be drawn to provide a remedy for the Section 2 violation.

13.     Plaintiff STEPHANIE ANTHONY is an adult African-American United States citizen who is a resident of and a registered voter in East Baton Rouge Parish, Louisiana. As a result of the demographics of her Supreme Court district and racially polarized voting, Ms. Anthony's vote is unlawfully diluted. A majority-black district including Ms. Anthony's home could be drawn to provide a remedy for the Section 2 violation.

### B.    The Defendants

14.     Defendant STATE OF LOUISIANA is one of the fifty states comprising the United States of America.

15.     Defendant R. KYLE ARDOIN is Secretary of State of Louisiana and is sued in his official capacity. The Secretary of State is the State's chief election officer. La. R.S. § 18:421 (2017).

### FACTS AND BACKGROUND

16.     Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), prohibits any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." A violation of Section 2 is established if it is shown that "the political processes leading to nomination or election" in the jurisdiction "are not equally open to participation by [a protected minority] in that its members have less opportunity than other members of the electorate to participate in the political

4

process and to elect representatives of their choice." *Id.* at § 10301(b). An electoral regime that dilutes the voting strength of a minority community may deprive the members of that community of having an equal opportunity to elect representatives of their choice under Section 2. Section 2 applies to the election of judges. *Chisom v. Roemer*, 501 U.S. 380 (1991).

## A. Louisiana Demographics

17. As of 2010, Louisiana had a total population of 4,533,372, with an African-American population of approximately 32%. Louisiana has the second highest percentage of African-American residents in the United States. White Louisianans comprise more than 60% of the State's population. Although Hurricane Katrina caused mass-displacement in 2005, especially among African-American residents in the New Orleans area, the racial breakdown of the State's population remained mostly unchanged from 2000 to 2010.

### Table 1 – Louisiana Total Population: 2000-2010

|  | 2000 Total Population | | 2010 Total Population | |
|---|---|---|---|---|
| White Alone, not Hispanic | 2,794,391 | 62.5% | 2,734,884 | 60.3% |
| Black or African-American Alone, not Hispanic | 1,443,390 | 32.3% | 1,442,420 | 31.8% |
| Hispanic or Latino Alone | 107,738 | 2.4% | 192,560 | 4.3% |
| Other | 123,457 | 2.8% | 163,508 | 3.6% |
| Total | 4,468,976 | | 4,533,372 | |

18. The African-American voting-age population ("*VAP*") in Louisiana is slightly lower than its percentage of the total population. As of 2010, African-American VAP amounted to approximately 30% while the white VAP is approximately 63%.

Table 2 – Louisiana Voting-Age Population: 2000-2010

|  | 2000 VAP | | 2010 VAP | |
|---|---|---|---|---|
| White Alone, not Hispanic | 2,128,485 | 65.5% | 2,147,661 | 62.9% |
| Black or African-American Alone, not Hispanic | 959,622 | 29.5% | 1,019,582 | 29.9% |
| Hispanic or Latino | 77,083 | 2.4% | 138,091 | 4.0% |
| Other | 83,987 | 2.6% | 110,023 | 3.2% |
| Total | 3,249,177 | | 3,415,357 | |

**B.    Louisiana Supreme Court Overview and Structure**

19.    The Louisiana Supreme Court is the court of last resort for both civil and criminal matters in Louisiana. It is the most powerful state court in Louisiana.

*i.*    **Structure**

20.    Per the Constitution of 1974, the Louisiana Supreme Court consists of one chief justice and six associate justices, all of whom are elected from single-member districts in partisan elections for ten-year terms.  The chief justice is the justice with the most seniority on the Court.

21.    When vacancies arise on the Court, the governor appoints a justice to serve until an election can be held.

22.    Candidates for full elected terms on the Court (as well as all other candidates in the State), participate in an open primary in which candidates from all parties first participate in a consolidated contest. If no single candidate receives 50% of the vote, the top-two candidates, regardless of party affiliation, proceed to a runoff election.

*ii.*    **The *Chisom* Litigation and African-American Representation**

23.    The original electoral process for the seven-member Supreme Court consisted of just six judicial districts – five single-member districts and one multi-member district which

elected two justices. The multi-member district encompassed Orleans Parish, which was majority-African-American, but the district as a whole was majority-white.

24.    Minority plaintiffs challenged that multi-member district in *Chisom v. Roemer*, 501 U.S. 380 (1991). In its decision, the United States Supreme Court held that elections for appellate judges could not unlawfully dilute minority votes under the Voting Rights Act.

25.    In response to the decision in *Chisom*, the Louisiana legislature passed Act 512 in 1992, which created a temporary eighth Supreme Court seat for the sub-district of Orleans. *See* 1992 La. Acts No. 512, § 1. An August 21, 1992 federal consent decree memorializing Act 512 stipulated that (a) the State would split the multi-member district into two single-member districts upon expiration of the temporary seat, and (b) one of those districts would consist of most of Orleans Parish and a portion of neighboring Jefferson Parish, making it majority-African-American.

26.    In 1992, a former Orleans Parish Civil District Court judge, Justice Revius Ortique, won the election for the newly-created seat and became the first African American on the State's high court.

27.    In 1994, after Justice Ortique reached the mandatory retirement age of 70 under the Louisiana Constitution, Bernette Joshua Johnson, then serving as chief judge of the Civil District Court for the Parish of Orleans, was elected to Ortique's *Chisom* seat and became the second African American to serve on the Supreme Court.

28.    In 1999 – the most recent reapportionment of Supreme Court districts – the Louisiana legislature drew seven single-member districts, consistent with the *Chisom* consent decree.

29. In 2000 and again in 2010, Justice Johnson ran unopposed and was re-elected to the Supreme Court from the sole majority-black district.

30. In 2013, Justice Johnson became Chief Justice of the Court.

31. Since 2000, Chief Justice Johnson has been the only African-American member of the Louisiana Supreme Court. The remaining six justices have always been white.

32. Of the 114 justices who have served on the Louisiana Supreme Court since 1813, Chief Justice Johnson and Justice Ortique are the only two African Americans.

## C. Section 2 Vote Dilution

### i. *Thornburg v. Gingles* Analysis

33. In *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986), the United States Supreme Court, identified three necessary preconditions ("*the Gingles preconditions*") for a claim of vote dilution under Section 2 of the Voting Rights Act:

    a. The minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district";

    b. The minority group must be "politically cohesive"; and

    c. The majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate."

34. Louisiana's African-American population and voting-age population are sufficiently numerous and geographically compact to form a majority of the total population and voting-age population in two properly-apportioned, constitutional single-member Supreme Court districts in a seven-district plan.

35. Louisiana's African-American voters are politically cohesive. They vote overwhelmingly for different candidates than those supported by white voters.

36.    Louisiana's white electorate votes as a bloc in support of different candidates than those supported by African-American voters. In non-majority-black districts, bloc voting by white members of the electorate consistently defeats the candidates preferred by African-American voters.

### ii.    Totality of the Circumstances Analysis

37.    In addition to the presence of the three *Gingles* preconditions, the totality of the circumstances shows that African-American voters have less opportunity than other members of the electorate to participate in the political process and to elect candidates of their choice to the Supreme Court in violation of Section 2 of the Voting Rights Act.

### A.    *History of Official Voting Discrimination*

38.    Louisiana has a long, well-documented history of voting-related discrimination—one so deep-rooted that "it would take a multi-volumed treatise to properly describe the persistent, and often violent, intimidation visited by white citizens upon black efforts to participate in Louisiana's political process." *Citizens for a Better Gretna v. City of Gretna*, 636 F. Supp. 1113, 1116 (E.D. La. 1986). After slavery was abolished, the State enacted numerous discriminatory voting restrictions, including: constitutional revisions that added a "grandfather clause," along with education and property requirements to register; poll taxes; voting roll purges; an "understanding clause" that functioned as a literacy test; an all-white primary that denied black voters access to determinative elections; citizenship and "morals" tests; anti-single shot voting provisions; and a majority-vote requirement for elections. *Major v. Treen*, 574 F.Supp. 325, 339-40 (E.D. La. 1983). Louisiana changed some of these "disenfranchisement techniques" only after the Supreme Court deemed them unconstitutional or after the 1965 Voting Rights Act banned them. *Id.* at 340.

39.     More recently, and in the judicial context, in the 1980s African-American plaintiffs challenged multimember election schemes for district, family court, and court of appeal judges across the State, alleging that they diluted black voting strength. *Clark v. Edwards*, 725 F. Supp. 285, 287 (M.D. La. 1988), *modified sub nom., Clark v. Roemer*, 777 F. Supp. 445 (M.D. La. 1990), *vacated*, 750 F. Supp. 200 (M.D. La. 1990), *cert. granted before judgment, order vacated*, 501 U.S. 1246 (1991), *supplemented*, 777 F. Supp. 471 (M.D. La. 1991). After three rounds of successful litigation, the *Clark* plaintiffs ultimately prevailed, forcing the Louisiana legislature to redress the Section 2 violations and alter electoral methods to substantively enfranchise black voters.

40.     As a result of *Clark*, the number of African-American judges in the State increased from a half-dozen before 1992 to approximately six-dozen today, all, or almost all, in majority-black districts.

41.     Prior to the decision in *Chisom*, the two-member Supreme Court district that included New Orleans unlawfully diluted minority voting strength.

42.     In 2012, Justice Jeffrey Victory, who is white, argued that he, and not Justice Johnson, should succeed Catherine Kimball as the next chief justice of Louisiana. Justice Victory maintained that Justice Johnson's years on the Court pursuant to the consent decree in *Chisom* should not be counted when assessing seniority. Justice Johnson reopened the *Chisom* case and moved to enforce its terms so that she, and not Justice Victory, should be appointed chief justice. On September 1, 2012, a federal district court issued an order enforcing the terms of the consent decree, holding that Justice Johnson's service as the *Chisom* justice must be credited in determining her tenure on the Court. *Chisom v. Jindal*, 890 F. Supp. 2d 696 (E.D. La. 2012).

43.    In recent years, Louisiana has also failed to comply with public assistance agency voter registration requirements under the National Voter Registration Act (NVRA), a failure that disproportionately impacted minority voters. *See Scott v. Schedler*, No. CIV.A. 11-926, 2013 WL 264603 (E.D. La. Jan. 23, 2013).

44.    As recently as 2017, the Louisiana legislature was found to have intentionally discriminated against African Americans by maintaining an electoral scheme that unlawfully diluted black votes under Section 2. *See Terrebonne Parish Branch NAACP v. Jindal*, 274 F. Supp. 3d 395 (M.D. La. 2017), *appeal dismissed sub nom. Fusilier v. Edwards*, No. 17-30756, 2017 WL 8236034 (5th Cir. Nov. 14, 2017).

### B.    *Racially Polarized Voting*

45.    As described above in paragraphs 35-36, regarding the *Gingles* preconditions, voting in Louisiana is racially polarized.

### C.    *Use of Enhancing Practices*

46.    Louisiana employs a majority-vote requirement for all Supreme Court elections, which further enhances discrimination against black voters. Under the current single-member Supreme Court districts and the open primary system, the 50% requirement disadvantages black voters. Specifically, African-American voters may coalesce around a particular candidate in a primary but, due to their minority status and racially polarized voting, fail to reach majority-support in the runoff election. Instead, white voters comprising the majority of an electorate can coalesce behind a single candidate to defeat the minority-preferred candidate.

47.    The discriminatory effects of a majority-vote requirement are not merely theoretical. In the 2012 primary for Supreme Court District 5, John Michael Guidry, the only

11

African American in the race, earned the most votes with 27.5% of the total. Jefferson Hughes, a white candidate, secured the second highest vote count – 21.2% of the total votes – and advanced to a runoff against Guidry. In the runoff election, Hughes defeated Guidry 52.8% to 47.2%.

48.    Supreme Court District 5 is as an unusually large Supreme Court district that also enhances discrimination against black voters. District 5 – which is centered around the Baton Rouge area but is majority-white – is, by far, the largest district in the state by population.

**D.    _Socio-Economic Disparities_**

49.    As a result of Louisiana's history of official and private discrimination, the State's African-American residents have a lower socio-economic status and lag behind white residents in a wide range of areas, including education, employment, income, and access to health care.

50.    African Americans in Louisiana are less likely to graduate high school than whites and less likely to hold a bachelor's degree.

51.    According to the U.S. Census Bureau's 2012-2016 American Community Survey 5-Year Estimates, African Americans in Louisiana were unemployed at a rate of 12.2%, compared to just 5.6% for whites.

52.    African American poverty rates in Louisiana were almost three times the white poverty rate for that same time period. In 2016, 33.1% of African Americans were below the poverty level, compared to just 12.7% of whites.

53.    According to the Louisiana Department of Health and Hospitals, from 2000–2005, the infant mortality rate – a key indicator of overall health status – was 13.9% for African Americans, compared to 7.6% for whites.

54.     African Americans were also 2.7 times more likely than white residents of Louisiana to lack health insurance.

### E.     *Racial Appeals in Campaigns*

55.     Elections for both judicial and non-judicial offices have been marked by racial appeals.

56.     For example, the 2012 campaign for Supreme Court District 5 was characterized by racial appeals. Justice Hughes included images of John Guidry throughout his campaign materials and went so far as to darken his image in some of those materials. Justice Hughes also labeled Guidry as an "affirmative action Democrat" and sent targeted campaign materials to parts of the district that linked Guidry to Chief Justice Johnson of the Louisiana Supreme Court, included their pictures, and expressed the need to elect Hughes to prevent Chief Justice Johnson from exercising power.

### F.     *History of African-American Elected Officials*

57.     African Americans are underrepresented in Louisiana public offices.

58.     Although African Americans comprise approximately 30% of VAP in Louisiana, all eight of the statewide executive office positions are currently held by white politicians.

59.     Louisiana has not had an African-American Governor since Reconstruction.

60.     Louisiana has never had an African-American U.S. Senator.

61.     Of the 105 seats in the Louisiana House of Representatives, only twenty-five are held by African Americans (23.8%).

62.     Of the 39 seats in the Louisiana Senate, only nine are held by African Americans (23.1%).

63.     Of the 6 congressional districts in Louisiana, only one is represented by an African American (16.7%).

64.     Nearly all of the African American members of the House of Representatives and State Senate were elected from majority-black districts.

65.     African Americans have also been underrepresented in trial and appellate courts across the State. *See Terrebonne Parish Branch NAACP*, 274 F. Supp. 3d at 445 ("While the black population comprises about 30.5% of the voting age population in Louisiana, black people only account for about 17.5% of the judges in Louisiana.").

## CLAIM FOR RELIEF

## VIOLATION OF SECTION 2 OF THE VOTING RIGHTS ACT OF 1965

66.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 to 65 above, as if fully set forth herein.

67.     Louisiana's African-American population is sufficiently numerous and geographically compact to provide for two properly-apportioned, majority-black, constitutional single-member Louisiana Supreme Court districts in a seven-district plan. In these two remedial districts, the African-American population would constitute a majority of both the total population and the voting-age population.

68.     Louisiana's African-American voters are politically cohesive, and judicial and non-judicial elections reflect a clear pattern of racially polarized voting that allows the bloc of white voters to defeat the African-American community's preferred candidate in all but one Louisiana Supreme Court district.

69.     The totality of the circumstances establishes that, as currently apportioned, the Louisiana Supreme Court districts have the effect of denying African-American voters an equal

opportunity to participate in the political process and to elect candidates of their choice, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

70.    Violations of Section 2 occur with each Louisiana Supreme Court election. Unless enjoined by order of this Court, Defendants will continue to act in violation of Section 2 of the Voting Rights Act by administering, implementing, and conducting future elections for the Louisiana Supreme Court using an unlawful election method.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully pray that the Court:

a.    Declare that the current apportionment of Louisiana Supreme Court districts violates Section 2 of the Voting Rights Act;

b.    Enjoin Defendants, their agents and successors in office, and all persons acting in concert with, or as an agent of, any Defendants in this action, from administering, implementing, or conducting any future elections for the Louisiana Supreme Court under the current method of election;

c.    Order the implementation of a new method of election for the Louisiana Supreme Court that complies with the Constitution of the United States and Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

d.    Award plaintiffs their reasonable attorneys' fees, pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988, and the costs and disbursements of maintaining this action, such as expert fees; and

e.    Order such additional relief as the interests of justice may require.

Dated: July 22, 2019          Respectfully submitted,

Arthur R. Thomas
Attorney At Law
3313 Government St.
Baton Rouge, LA 70806
LA Bar # 12797
Telephone: (225) 334-7490
Facsimile: (225) 334-7491

**LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW**

Jon Greenbaum (*pro hac vice* — to be filed)
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg (*pro hac vice* — to be filed)
erosenberg@lawyerscommittee.org
Brendan B. Downes (*pro hac vice* — to be filed)
bdownes@lawyerscommittee.org
Jennifer N. Nwachukwu (*pro hac vice* — to be
filed)
jnwachukwu@lawyerscommittee.org
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

**BRYAN CAVE LEIGHTON PAISNER LLP**

Alec W. Farr (*pro hac vice* — to be filed)
awfarr@bclplaw.com
Rachel A. Beck (*pro hac vice* — to be filed)
rachel.beck@bclplaw.com
Adam L. Shaw (*pro hac vice* — to be filed)
adam.shaw@bclplaw.com
1155 F Street NW
Washington, D.C. 20004
Telephone: (202) 508- 6000
Facsimile: (202) 508-6200

Meryl Macklin (*pro hac vice* — to be filed)
meryl.macklin@bclplaw.com

16

Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-6464

Please serve Complaint on Defendants:
State of Louisiana Through

John Bel Edwards
Governor of State of Louisiana
P. O. Box 94004
Baton Rouge, Louisiana 70804

Jeff Landry
Attorney General
State of Louisiana
1885 North Third St.
Baton Rouge, La 70802

Melissa Harris
Director of Office of Risk Management
P. O. Box 91106
Baton Rouge, Louisiana 70821-9106

Kyle Ardoin
Secretary of State of Louisiana
8585 Archives Avenue
Baton Rouge, Louisiana 70809

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
## MIDDLE DISTRICT OF LOUISIAN.

| | |
|---|---|
| LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; ANTHONY ALLEN; AND STEPHANIE ANTHONY<br><br>*Plaintiff(s)*<br><br>v.<br><br>STATE OF LOUISIANA; AND R. KYLE ARDOIN, IN HIS CAPACITY AS SECRETARY OF STATE OF LOUISIANA,<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  John Bel Edwards
Governor of State of Louisiana
State of Louisiana
P. O. Box 94004
Baton Rouge, LA 70804

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Arthur R. Thomas
Arthur R. Thomas & Associates, LLC
3313 Government Street
Baton Rouge, Louisiana 70806
artthomas1@cox.net

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: _____        _____
                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

MIDDLE DISTRICT OF LOUISIAN.

| | | |
|---|---|---|
| LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; ANTHONY ALLEN; AND STEPHANIE ANTHONY | ) ) ) ) | |
| *Plaintiff(s)* | ) ) | |
| v. | ) ) | Civil Action No. |
| STATE OF LOUISIANA; AND R. KYLE ARDOIN, IN HIS CAPACITY AS SECRETARY OF STATE OF LOUISIANA, | ) ) ) ) | |
| *Defendant(s)* | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Jeff Landry
Attorney General
State of Louisiana
1885 North Third St.
Baton Rouge, LA 70802

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Arthur R. Thomas
Arthur R. Thomas & Associates, LLC
3313 Government Street
Baton Rouge, Louisiana 70806
artthomas1@cox.net

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*


                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
## MIDDLE DISTRICT OF LOUISIAN.

| | |
|---|---|
| LOUISIANA STATE CONFERENCE OF THE<br>NATIONAL ASSOCIATION FOR THE<br>ADVANCEMENT OF COLORED PEOPLE;<br>ANTHONY ALLEN; AND STEPHANIE ANTHONY<br><br>*Plaintiff(s)*<br><br>v.<br><br>STATE OF LOUISIANA; AND R. KYLE ARDOIN, IN<br>HIS CAPACITY AS SECRETARY OF  STATE OF<br>LOUISIANA,<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Kyle Ardoin
Secretary of State
State of Louisiana
8585 Archives Avenue
Baton Rouge, LA 70809

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Arthur R. Thomas
Arthur R. Thomas & Associates, LLC
3313 Government Street
Baton Rouge, Louisiana 70806
artthomas1@cox.net

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: _____        _____
                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                        *Server's signature*

                                                            _____
                                                                        *Printed name and title*


                                                            _____
                                                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### MIDDLE DISTRICT OF LOUISIAN.

| | |
|---|---|
| LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; ANTHONY ALLEN; AND STEPHANIE ANTHONY<br><br>*Plaintiff(s)*<br><br>v.<br><br>STATE OF LOUISIANA; AND R. KYLE ARDOIN, IN HIS CAPACITY AS SECRETARY OF STATE OF LOUISIANA,<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Melissa Harris
Director of Office of Risk Management
State of Louisiana
P. O. Box 91106
Baton Rouge, LA 70821-9106

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Arthur R. Thomas
Arthur R. Thomas & Associates, LLC
3313 Government Street
Baton Rouge, Louisiana 70806
artthomas1@cox.net

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

  ❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

  ❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

  ❐ I served the summons on *(name of individual)* _____ , who is

  designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

  ❐ I returned the summons unexecuted because _____ ; or

  ❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____     _____
                *Server's signature*

           _____
                *Printed name and title*

           _____
                *Server's address*

Additional information regarding attempted service, etc: