IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA STATE CONFERENCE, OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; ANTHONY ALLEN; AND STEPHANIE ANTHONY<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF LOUISIANA; and R. KYLE ARDOIN, in his capacity as Secretary of State of Louisiana,<br><br>Defendants. | Civil Action No. 3:19-cv-00479-JWD-EWD |

## STATUS REPORT

**A.   JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a) and 28 U.S.C. § 1331.

2. Defendant, R. Kyle Ardoin, in his capacity as Secretary of State of Louisiana, submits that he does not have a sufficient personal stake in the outcome of the controversy to create the requisite adversarial relationship between the parties that assures a vigorous and thorough presentation of the issues and claims made by the plaintiffs. Accordingly, there is no case or controversy with respect to the claims made against the Secretary of State, and the court lacks Art. III jurisdiction. Plaintiffs contest this assertion by the Secretary of State.

**B.   BRIEF EXPLANATION OF THE CASE**

1. **Plaintiffs' Claims**:  Plaintiffs claim that the current voting districts for the Louisiana Supreme Court ("the Supreme Court") have the effect of denying African American

voters an equal opportunity to participate in the political process to elect candidates of their choice in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. Although the voting-age population of Louisiana is approximately 30% African American, African Americans comprise a majority in only one of the seven Supreme Court electoral districts (i.e., 14% of the districts). Six of the seven voting districts for the Supreme Court are majority-white. As a result of the demographics of those districts and racially polarized voting, African Americans have been prevented from equal participation in the election of justices to the Supreme Court. Although Supreme Court Justices have been elected in Louisiana since 1904, the Court has had only two African American justices in its history. Both were elected from the sole majority-black district in the State -- a district created as a result of voting rights litigation.

Louisiana's African-American population is sufficiently large and geographically compact to constitute a majority in two fairly drawn, constitutional single-member districts for the Supreme Court; the state's African American population is politically cohesive; and the State's white voting-age majority votes sufficiently as a bloc to enable it to defeat African-American voters' preferred candidates in six of Louisiana's seven Supreme Court districts. These districts have not been redrawn since 1999. Because of these circumstances, as well as the historical, socioeconomic and electoral conditions of Louisiana, Plaintiffs allege that the Supreme Court districts as currently drawn violate Section 2 of the Voting Rights Act.

    2.    **<u>Defendant's Claims</u>**:

    b.    Defendant Secretary of State: The Court lacks Art. III jurisdiction over the claims asserted against his office in this case.

b.      Defendants State of Louisiana, by and through the Attorney General of Louisiana, and the Louisiana Secretary of State maintain this case should be dismissed for several reasons.[1] First, the Supreme Court district maps are part of a continuing and ongoing consent decree between Louisiana and plaintiffs in a case in the Eastern District of Louisiana. *See e.g. Chisom v. Jindal*, 890 F.Supp.2d 696 (E.D. La. 2012).  The Eastern District of Louisiana has specifically retained jurisdiction over the subject matter of the suit until there is an "affirmative ruling by [that] Court that the Consent Judgment has been satisfied and thus has been vacated and terminated." *Chisom v. Jindal*, 890 F. Supp. 2d at 711. As a result, this case cannot be heard by the Middle District of Louisiana because it lacks subject matter jurisdiction.  It is either filed in the wrong court, or an impermissible collateral attack on a sister federal court.

Second, federal courts have already wrestled with configuring a 7-district map with two majority-minority districts.  Three times the Western District of Louisiana rejected a 7-district congressional map with two majority minority districts as a racial gerrymander.  *See e.g. Hays v. State*, 936 F. Supp. 360, 362 (W.D. La. 1996) ("For yet a third time . . . the redistricting plan enacted by the Legislature violates the equal protection rights of the Plaintiffs").

**C.      PENDING MOTIONS**

The parties anticipate a Motion to Dismiss by Defendant State of Louisiana and it is anticipated that Defendant Secretary of State will be filing a Rule 12 motion as well. Both motions are now due October 4, 2019. *See* (ECF No. 23).

**D.      ISSUES**

The principal legal issues, which are in dispute, are as follows:

---

[1] As explained in Defendants' Motion for Extension, *see* (ECF No. 18), what is contained herein remains a preliminary assessment subject to Defendants on-going investigation of facts. Nothing in this Status Report should be construed as a waiver of any other defense or admission of any fact. Defendants reserve all rights to amend consistent with the Court's precedents and the Federal Rules of Civil Procedure.

3

1. As currently drawn, do the voting districts for the Supreme Court have the effect of denying African American voters an equal opportunity to participate in the political process to elect candidates of their choice?

2. Can two constitutional single member African American-majority districts be drawn to enable African Americans an equal opportunity to elect Supreme Court candidates of their choice?

3. Does this Court have jurisdiction to consider the claims of the Plaintiffs in light of the continuing Consent Decree entered by the Eastern District of Louisiana in *Chisom*?

4. Whether the court has subject matter jurisdiction with respect to the claims and causes of action against the Secretary of State. If compelled to defend the case on the merits, whether the Secretary of State is guilty of any violation complained of by the plaintiffs.

**E.    DAMAGES**

This case does not involve a traditional calculation of monetary damages. Plaintiffs seek declaratory and injunctive relief pursuant to 52 U.S.C. § 10301. Plaintiffs also seek an award of their reasonable attorneys' fees and the costs and disbursements of maintaining this action pursuant to 52 U.S.C. § 10310(e) and 42. U.S.C. § 1988.

The Secretary of State avers that the attorney fees calculated in accordance with the *Lodestar* formula are due by the Plaintiffs should the Secretary of State prevail. Plaintiffs contest this assertion by the Secretary of State.

**F.    SERVICE**

All Defendants have been served and there are no unresolved issues concerning service of process and personal jurisdiction. Jurisdiction is at issue.

**G.    DISCOVERY**

1. **Initial Disclosures**:

    A.    Have the initial disclosures required under FRCP 26(a)(1) been completed?  [ ] YES [X] NO

2. **Discovery in Progress:**

    No discovery has been taken at this time.

3. **Protective Orders and Limitations on Discovery:**

The parties do not anticipate any discovery that will require protective orders or limitations on discovery, unless Plaintiffs intend to seek or access the confidential portions of the State's voter files for any reason.

4. **Discovery from Experts**:

    Identify the subject matter(s) as to which expert testimony will be offered:

    a.    **Plaintiffs' Expert Topics:** Plaintiffs anticipate submitting expert witness testimony concerning (1) the historical, socioeconomic and electoral conditions in Louisiana generally and with regard to judicial elections specifically; (2) analyses showing that the State's African American population is politically cohesive; (3) analyses showing that the State's white voting-age majority votes sufficiently as a bloc to enable it to defeat African American voters' preferred candidates; (4) Louisiana's history of official voting discrimination; (5) Louisiana's history of racially polarized voting; (6) Louisiana's use of enhancing practices; (7) socio-economic barriers to voting in Louisiana; (8) analyses showing racial appeals in campaigns; (9) analyses showing the persistent under-representation of African Americans in public office in Louisiana; and (10) analyses showing that two constitutional majority-African-American Supreme Court districts can be drawn.

   b.  **Defendants' Expert Topics:** Defendant State of Louisiana will likely submit expert reports to rebut one or more of the expert reports to be submitted by Plaintiffs, and may submit one or more expert reports covering subjects not listed above.

## H. PROPOSED SCHEDULING ORDER

1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline:

 Plaintiffs do not propose an alternative time line for initial disclosures. Defendants State of Louisiana and Louisiana Secretary of State propose that exchanging initial disclosures or any discovery process be held in abeyance until the Court rules on both the pending and forthcoming Motion(s) to Dismiss.

2. Recommended deadlines to join other parties or to amend the pleadings:

  Plaintiffs' proposal: **January 15, 2020**.

  Defendants' proposal: **4 months after ruling on the Motions to Dismiss.**

3. Filing all discovery motions and completing all discovery except experts:

  Plaintiffs' proposal: **January 31, 2020**.

  Defendants' proposal: **5 months after ruling on the Motions to Dismiss.**

4. Disclosure of identities and resumes of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

  Plaintiffs' experts:

   Plaintiffs' proposal: **February 15, 2020.**

   Defendants' proposal: **5.5 Months after ruling on the Motions to Dismiss.**

  Defendants' experts:

6

>Plaintiffs' proposal: **March 15, 2020.**
>
>Defendants' proposal: **6.5 Months after ruling on the Motions to Dismiss.**

5. Rebuttal experts (if any):

    >Plaintiffs' proposal: **April 17, 2020.**
    >
    >Defendants' proposal: **7.5 Months after ruling on the Motions to Dismiss.**

6. Exchange of expert reports:

    >Plaintiffs' experts:
    >
    >>Plaintiffs' proposal: **February 28, 2010.**
    >>
    >>Defendants' proposal: **6 months after ruling on the Motions to Dismiss.**
    >
    >Defendants' experts:
    >
    >>Plaintiffs' proposal: **March 30, 2020.**
    >>
    >>Defendants' proposal: **7 months after ruling on the Motions to Dismiss.**
    >
    >Rebuttal experts (if any):
    >
    >>Plaintiffs' proposal: **April 17, 2020.**
    >>
    >>Defendants' proposal: **7.5 months after ruling on the Motions to Dismiss.**

7. Completion of discovery from experts:

    >Plaintiffs' proposal: **May 15, 2020.**

    Defendants' proposal: **8.5 months after ruling on the Motions to Dismiss.**

8.  Filing dispositive motions and *Daubert* motions:

    Plaintiffs' proposal: **June 19, 2020.**

    Defendants' proposal: **9 months after ruling on the Motions to Dismiss.**

9.  All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.[2] The parties should not provide any proposed dates for these remaining deadlines.

 a.  Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

 b.  Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

 c.  Deadline to file responses to motions in limine (approximately 22-24 weeks after dispositive motion deadline).

 d.  Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

 e.  Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

---

[2]  The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only. The actual dates may vary depending on the complexity of a particular case. All requests for subsequent changes to the deadlines set in the scheduling order under paragraph numbers 7 or 8 must be by motion directed to the presiding judge.

   f. Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

   g. Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

**I. TRIAL**

1. Has a demand for trial by jury been made?  [ ] YES [ **X** ] NO

2. Estimate the number of days that trial will require:  **Seven days**

**J. OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

[**X**] YES [ ] NO

   i. If the answer is *yes*, please explain:  Defendants State of Louisiana and Louisiana Secretary of State believe that this Court is without jurisdiction over the Supreme Court map because it is the subject of the continuing consent decree from the Eastern District of Louisiana in the *Chisom* case. Plaintiffs contest this assertion.

   ii. If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**  [ ] YES [**X**] NO

**K.    SETTLEMENT**

    1.    Please set forth what efforts, if any, the parties have made to settle this case to date.

    There have been no settlement discussions at this time.

    2.    Do the parties wish to have a settlement conference:  [**X**] YES [ ] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial?

    Plaintiffs would be willing to engage in settlement discussions at any time. Defendant State of Louisiana suggests that, if this Court has jurisdiction, a settlement conference may be productive after the Census Bureau releases the 2020 Census data.

**L.    CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge.  Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:  [ ] YES [**X**] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the <u>attached form</u> to indicate your consent.**

Report

Dated:   September 5, 2019

/s/  *Angelique Freel*
Elizabeth B. Murrill (La. Bar #20685)
Solicitor General – Lead Counsel
Angelique D. Freel (La. Bar #28561)
Jeffrey Wale (La. Bar #36070)
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone No. 225-326-6766
Facsimile No. 225-326-6793
E-Mail Address:
freela@ag.louisiana.gov
walej@ag.louisiana.gov

Jason Torchinsky (VSB 47481)*
Phillip M. Gordon (TX 24096085)*
HOLTZMAN VOGEL JOSEFIAK
TORCHINSKY PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
Email: jtorchinsky@hvjt.law
pgordon@hvjt.law
*admitted *pro hac vice*

*Counsel for Defendant State of Louisiana*

/s/  *Celia R. Cangelosi*
Celia R. Cangelosi
Bar Roll No. 12140
5551 Corporate Blvd., Suite 101
Baton Rouge, LA 70808
Telephone: (225) 231-1453
Facsimile: (225) 231-1456
Email: celiacan@bellsouth.net

*Counsel for Defendant Secretary of State*

Respectfully submitted,

ARTHUR R. THOMAS

/s/  *Arthur R. Thomas*
By: Arthur R. Thomas, Esq., LA Bar #12797
Attorney At Law
3313 Government Street
Baton Rouge, LA 70806
(225) 334-7490
(225) 334-7491 Facsimile

/s/  *Alec W. Farr*
Alec W. Farr, Esq.*
awfarr@bclplaw.com
Meryl Macklin Esq.*
meryl.macklin@bclplaw.com
Adam L. Shaw, Esq.*
adam.shaw@bclplaw.com
Jason C. Semmes, Esq.*
jason.semmes@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street NW, Suite 700
Washington, DC  20004
(202) 508-6000
(202) 508-6200 Facsimile

Jon Greenbaum, Esq.*
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg, Esq.*
erosenberg@lawyerscommittee.org
Brendan B. Downes, Esq.*
bdownes@lawyerscommittee.org
Jennifer N. Nwachukwu, Esq.*
jnwachukwu@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC  20005
(202) 662-8600
*admitted *pro hac vice*

*Counsel for Plaintiffs Louisiana State Conference of the National Association for the Advancement of Colored People, Anthony Allen, and Stephanie Anthony*