UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-479-JWD-SDJ** |
| **STATE OF LOUISIANA, et al.** | |

**ORDER GRANTING INTERVENTION**

Before the Court are two motions seeking intervention under Rule 24 of the Federal Rules of Civil Procedure—a Motion to Intervene (R. Doc. 109) and an Amended Motion to Intervene and for Temporary Restraining Order and Preliminary Injunction (R. Doc. 114), both filed by Movants John L. Weimer, Greg Champagne, Mike Tregre, and Craig Webre. While the Motion to Intervene requests only limited intervention in this action by Movants, the Amended Motion to Intervene, while seeking the same outcome, also requests that the Court issue a temporary restraining order and preliminary injunction to, in the words of the Movants, "maintain the status quo."[1] To be clear, this Order addresses only the issue of whether Movants are entitled to intervene in this litigation (going forward, Movants' requests to intervene, as set forth in R. Doc 109 and R. Doc 114, will be referred to collectively as the "Motion" or "Motion to Intervene" unless otherwise specified).[2] Both Plaintiffs and Defendants oppose the Movants' Motion, having filed oppositions

---

[1] R. Doc. 114 at 1.
[2] *See* R. Doc. 113 at 1 (Magistrate Judge to rule on Motion to Intervene; District Judge will address whether to grant additional relief if intervention granted.)

thereto (R. Docs. 121, 122). Movants, in response, filed a Reply Memorandum in Support of the Motion (R. Doc. 125).

This case, filed on July 23, 2019, challenges the electoral districts for the Louisiana Supreme Court.[3] The Complaint was filed by the Louisiana Conference of the National Association for the Advancement of Colored People, along with two African-American voters living in the Fifth Supreme Court District, against the State of Louisiana and Kyle Ardoin, in his official capacity as the Secretary of State. The Complaint alleges that Louisiana's seven current districts for electing Supreme Court justices, of which only one is majority-black, dilute the votes of the individual Plaintiffs in violation of the requirements of the Voting Rights Act.[4] The Complaint asserts that an additional majority-black district could be created that would include the individual Plaintiffs' respective homes to remedy this violation.[5]

On May 2, 2022, the Parties filed a Consent Motion seeking "to stay all Louisiana Supreme Court elections until the State's Supreme Court voting districts have been reapportioned."[6] The Court granted the Motion on May 4, 2022, ordering "that all Louisiana Supreme Court elections are stayed until the State's Supreme Court voting districts have been reapportioned subject to the ability of either Party to seek to terminate the stay if the parties are unable to reach agreement, the Legislature does not approve districts agreed upon by the Parties, or the voters refuse to approve any proposed constitutional amendments."[7]

---

[3] *See* R. Doc. 1.
[4] *Id.* at 4.
[5] *Id.* As will be referenced in this Order, Movants claim that "[t]he Complaint in this lawsuit seeks to redraw District Five, generally in the Baton Rouge area" and that "it would be unreasonable to believe that any action or stay of the upcoming Louisiana Supreme Court election in District Six would be impacted by pending litigation concerning voters within District Five." R. Doc. 114-1 at 2, 5. Defendants disagree, arguing that redistricting to remedy malapportionment would "almost certainly" change all districts. R. Doc. 122 at 7. The Court, in writing this, only seeks to set the stage for the current dispute over intervention, and in no way makes any determination as to the accuracy of any Party's or any Movant's arguments on this issue.
[6] R. Doc. 100 at 1.
[7] R. Doc. 101 at 1.

Movants are voters from Louisiana Supreme Court District Six.[8] Movant John L. Weimer also files this Motion "in his capacity as a candidate for Louisiana Supreme Court Justice from District Six."[9] They seek to intervene in this litigation to "move for a temporary restraining order and preliminary injunction to maintain the status quo."[10] All Movants want to participate—all as voters and one as a candidate—in the election of a justice to represent Louisiana Supreme Court District Six, currently set for November 8, 2022.[11] Qualifying as a candidate for said election begins on July 20, 2022—hence the expedited nature of these proceedings.[12] As the Consent Stay Order issued by this Court stays all Supreme Court elections, Movants want to enter this litigation to seek injunctive relief that allows the upcoming election in District Six to be held as scheduled.[13] Both Plaintiffs and Defendants in this litigation oppose Movants' Motion, claiming that Movants are not entitled to intervention, either as of right or permissively, in this case.[14]

For the reasons set forth below, the Court finds that Movants are entitled to intervene in this litigation, and their Motion is **GRANTED** to the extent it seeks intervention.[15]

### A. Law and Analysis

#### 1. Limited-Purpose Intervention

As an initial matter, both Plaintiffs and Defendants argue in their respective Oppositions that Movants are not entitled to intervene in this litigation for a limited purpose. In their initial Motion to Intervene, Movants moved "to intervene in this action for the limited purpose of filing a Motion to Partially Lift Consent Stay Order."[16] In their Amended Motion to Intervene, they

---

[8] R. Doc. 114 at 1.
[9] *Id. See also* R. Doc. 115.
[10] *Id.*
[11] *Id.* at 1-2.
[12] *Id.* at 2.
[13] *Id.*
[14] R. Docs. 121, 122.
[15] Again, this Order does not resolve Movants' additional requested relief.
[16] R. Doc. 109 at 1.

request intervention to seek a temporary restraining order and preliminary injunction.[17] Thus, Movants seek to intervene for the limited purpose of having the stay lifted so that the District Six election can take place this fall, nothing more. Per Defendants, "it is not possible to intervene in litigation for a 'limited purpose' as Proposed Intervenors suggest."[18] Plaintiffs echo this argument, claiming that "[i]ntervention is not permitted on the narrow grounds sought in the motion."[19]

However, neither Plaintiffs nor Defendants cite to any cases in which a motion to intervene was denied because it was for a limited purpose, and a review of case law in this Circuit easily contradicts the Parties' claims. *See Swoboda v. Manders*, 665 F. App'x 312, 313, 315 (5th Cir. 2016) (granting motion to intervene for "limited purpose" of filing a motion for protective order to protect certain privileged documents); *Brumfield v. Dodd*, 749 F.3d 339, 341, 346 (5th Cir. 2014) (granting intervention as of right "for the limited purpose of opposing the motion for permanent injunction"); *So. Audio Servs., Inc. v. Carbon Audio, LLC*, 141 F. Supp. 3d 653, 656 (M.D. La. 2015) (noting motion to intervene previously granted in this litigation "for the limited purpose of allowing Defendants the opportunity to file an opposition to Plaintiff's Motion for Default Judgment"); *Blue Spike, LLC v. Audible Magic Corp.*, No. 15-584, 2016 WL 3870069, at *2 (E.D. Tex. Apr. 18, 2016) (granting motion to intervene for "limited purpose" of moving to unseal documents); *In re Taxable Mun. Bonds Litig.*, MDL No. 863, 1993 WL 133826, at *3 (E.D. La. Apr. 15, 1993) (granting motion to intervene by three banks for "limited purpose" of appealing order regarding arbitration of claims in MDL, as it relates to the proposed intervenors). Moreover, even a case cited by Defendants in their Opposition—*Empire Blue Cross and Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217 (9th Cir. 1995)—involves a limited-purpose motion

---

[17] R. Doc. 114 at 1.
[18] R. Doc. 122 at 2.
[19] R. Doc. 121 at 2.

to intervene. While the motion in that case was denied, it was denied because it was "untimely," not because it sought intervention for a limited purposed. *Empire Blue Cross and Blue Shield*, 62 F.3d at 1221. Indeed, the only issue considered by the Ninth Circuit was whether the timeliness requirement applicable to substantive motions to intervene was also "implicated in the context of limited-purpose motions to intervene." *Id.* at 1220. Critically, the Ninth Circuit expressed no doubt that intervention could be sought for a limited purpose. As such, the Court finds this argument without merit.

### 2. Article III Standing

Plaintiffs argue that because Movants admittedly "take no position … on the merits of the claims and defenses of any party in this litigation"[20] and seek intervention only for purposes of challenging the consent stay Order, they lack Article III standing to enter this litigation.[21] Per Plaintiffs, "[o]ne cannot be completely disinterested in the outcome of a lawsuit while simultaneously having Article III standing in that lawsuit."[22] Movants respond that the fact that they take no position on the merits of this case alone does not deprive them of standing.[23] They argue that, despite this, they "do have an interest … in the Consent Stay Order, which apparently extends to District Six despite the lack of any Voting Rights Act violations in that district" and, in particular, "an interest in ensuring that the Consent Stay Order does not disenfranchise them relative to the upcoming election."[24]

"[A] would-be intervenor must establish that he has Article III standing if, inter alia, he is not seeking any relief that is 'also being sought by at least one subsisting party with standing to do

---

[20] R. Doc. 121 at 1 (quoting R. Doc. 109 at 2).
[21] R. Doc. 121 at 1.
[22] *Id.*
[23] R. Doc. 125 at 2.
[24] *Id.*

so.'" *League of United Latin Am. Citizens [LULAC], Dist. 19 v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011) (quoting *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998)). "The three well-known components of standing are injury in fact, causation, and redressability." *Id.* As Movants here seek to lift the Consent Stay Order for the purpose of holding a Louisiana Supreme Court election, which the Parties specifically agreed to suspend pending reapportionment of the Supreme Court voting districts, it is clear to the Court that Movants are seeking relief that is different from the subsisting parties. As such, it must first be determined whether Movants have Article III standing before the Court can consider the propriety of intervention here. The Court, therefore, turns to whether Movants have satisfied the three requirements for demonstrating standing.

### a.     Injury in Fact

"[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992). "This injury must be both 'concrete' and 'particularized.'" *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). "An injury is particularized if it 'affects the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1) (modifications omitted). "To satisfy this injury-in-fact test, [intervenors] therefore must allege more than an injury to *someone's* concrete, cognizable interest; they must 'be themselves among the injured.'" *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Here, Movants argue that their injuries "are concrete and particularized in that the Consent Stay Order, if permitted to remain in place, will deprive the Intervenors of the pre-existing right to vote and, for Intervenor Candidate [Weimer], his constitutional right to qualify for and seek elected

office on November 8, 2022."[25]  In support of their argument, Movants rely heavily on the Fifth Circuit's decision in *LULAC, Dist. 19 v. City of Boerne*, *supra*.  In that case, an individual sought to intervene in a Voting Rights Act suit brought by LULAC against the City of Boerne, Texas.  *LULAC, Dist. 19*, 659 F.3d at 425.  The individual, Michael Morton, sought to challenge a consent decree, adopted by the district court, that changed the election of city council members from a system of at-large elections with cumulative voting to a system of single-member-district elections.  *Id.*  Morton argued that the consent decree deprived him of the right under the city's charter to vote for all five city council members, instead restricting him to vote only for the one in whose single-member district he resided. *Id.* at 428.

In determining that Morton had Article III standing to seek to intervene, the Fifth Circuit found that Morton "stated an injury that is more than a generalized grievance and is sufficiently concrete and particularized to fulfill the injury-in-fact requirement of Article III standing doctrine." *Id*.  Because Morton was being deprived of a pre-existing right to vote for certain elected officials, the Fifth Circuit found Morton had suffered an injury-in-fact sufficient to meet the Article III standing requirement.  *Id.* at 429-30 (citing *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.3d 831 (5th Cir. 1993)) (finding two Texas district court judges, seeking to intervene in their individual capacities to object to a proposed decree that would deprive voters of the right to vote for all judges with general jurisdiction over their county, suffered injury-in-fact sufficient for Article III standing).  Movants claim that their rights as voters are being similarly restricted by the Consent Stay Order entered in this litigation, as they are seeking to protect their right "to vote on the scheduled November 8, 2022 Supreme Court election, a right which the Consent Stay Order abrogates."[26]

---

[25] R. Doc. 114-1 at 3.
[26] R. Doc. 114 at 3.

"The Court will not spill ink expounding on the centrality of the right to vote, which is unquestionably 'of the most fundamental significance under our constitutional structure.'" *Clark v. Edwards*, 468 F. Supp. 3d 725, 735-36 (M.D. La. 2020) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)); *see also Oregon v. Mitchell*, 400 U.S. 112, 241 (1970) ("The right to vote has long been recognized as a fundamental political right, because preservative of all rights.") (citation and internal quotations omitted).

Given the Fifth Circuit's finding in *LULAC, Dist. 19*, and the significance of the right to vote, the Court cannot find that Movants, who are being deprived of the right to vote in an election for a Supreme Court justice—an election which has not occurred in their district in almost 10 years—would not suffer an injury in fact if the election was postponed indefinitely. This litigation has been pending since 2019, with no indication in briefing by any Party of imminent resolution of their dispute. Thus, the current stay could delay the upcoming District Six election until these Parties can reach an agreement as to reapportionment of the Supreme Court electoral districts, which agreement would then require legislative approval.[27] This indefinite stay threatens Movants' preexisting right to vote and interferes with Movant Weimer's opportunity to be a candidate for office. As such, the Court finds Movants have demonstrated sufficient injury-in-fact to meet the requirement for Article III standing.[28]

---

[27] *See* R. Doc. 122 at 5 ("Additionally, the Louisiana Legislature offered several bills that dealt with redistricting of the Louisiana Supreme Court in both the 2022 First Extraordinary Session and the 2022 Regular session. These bills … demonstrated that redistricting of the Louisiana Supreme Court, including District 6, is an issue that must be taken up by the State."). Interestingly, as disclosed by Movants in their Reply, "after the Complaint [in this case] was filed three other Supreme Court elections proceeded and three justices were duly elected and seated, all in accordance with their existing districts." R. Doc. 125 at 4. This fact belies Defendants' arguments that allowing the District Six election to go forward "will allow a judge to be elected from a malapportioned district" and will effectively lock District Six in place, meaning "the parties cannot proceed to settle a case with the boundaries of certain districts locked in place." R. Doc. 122 at 7, 8.

[28] None of this is to say that the Parties are not engaged in important work in their attempts to negotiate a settlement of this action.

b. **Causation**

"The causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *LULAC, Dist. 19*, 659 F.3d at 431 (quoting *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)). Here, Movants' alleged injuries—loss of the right to vote and the ability to establish candidacy—are directly caused by the Order staying all Louisiana Supreme Court elections, which Order is "fairly traceable" to the Parties in this litigation because they agreed on said stay and submitted a Consent Motion to Stay All Supreme Court Elections to this Court.[29] Thus, this element of standing has been satisfied.

c. **Redressability**

Finally, "[t]he redressability requirement is satisfied if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Bennett*, 520 U.S. at 167). Movants' alleged injuries will be redressed if either the Order staying the elections is partially lifted, allowing the election in District Six to occur, as Movants request in their initial Motion to Intervene, or if injunctive relief prohibiting the stay to continue is granted, as requested by Movants in their Amended Motion. Either way, the election of a Supreme Court justice from District Six would take place this fall as scheduled, thereby preserving Movants' ability to vote and Movant Weimer's ability to run as a candidate for that position. This element, too, has been satisfied. Thus, as all requirements have been met, the Court finds that Movants have Article III standing to proceed with their Motion.

3. **Intervention as of Right**

Rule 24 of the Federal Rules of Civil Procedure provides for "[i]ntervention—a procedure by which an outsider with an interest in a lawsuit may come in [even] though [it] has not been

---

[29] R. Doc. 100 at 1 ("The parties ask the Court to stay all Louisiana Supreme Court elections until the State's Supreme Court voting districts have been reapportioned.").

named as a party by the existing litigants." Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1901 (3d ed. 2007). The rule distinguishes between two kinds of intervention—intervention as of right and permissive intervention. *See* Fed. R. Civ. P. 24(a) (intervention as of right) and 24(b) (permissive intervention). A court must allow intervention if the motion is timely and the movant either: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the action and is so situated that disposing of the action may impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a) (intervention as of right). Rule 24(b) provides that the Court may permit anyone to intervene who (1) is given a conditional right to intervene by a federal statute or (2) has a claim or defense that shares with the main action a common question of law or fact. Regardless of the type of intervention, "Rule 24 is to be liberally construed." *Brumfield*, 749 F.3d at 341.

Here, Movants seek intervention as of right but also request, as an alternative remedy, permissive intervention.[30] As such, the Court turns first to whether Movants are entitled to intervene as of right pursuant to Rule 24(a). "A party seeking to intervene as of right must satisfy four requirements: (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994)). The Court assesses each of these factors, in turn, below.

---

[30] R. Doc. 114 at 2-4.

### a. Whether Movants' Application was Timely

In their Oppositions to Movants' Motion, both Plaintiffs and Defendants argue that Movants' Motion, which was filed on June 29, 2022, almost two months after entry of the Order by this Court staying the election at issue on May 4, 2022, is untimely.[31] "Determining the timeliness of a motion to intervene entails consideration of four factors: (1) the length of time during which the would-be intervenor knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *Sierra Club*, 18 F.3d at 1205 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)). However, the Fifth Circuit has cautioned that an analysis of timeliness "is contextual" and "absolute measures of timeliness should be ignored." *Id.* (citing *Stallworth*, 558 F.2d at 266). Similarly, "[t]imeliness is not determined solely by the length of time that passes before a motion to intervene is made" and, instead, "must be determined from all the circumstances in the case." *Assoc. of Prof. Flight Attendants v. Gibbs*, 804 F.2d 318, 320, 321 (5th Cir. 1986). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 21-071, 2022 WL 974335, at *3 (N.D. Tex. Mar. 31, 2022) (quoting *Sierra Club*, 18 F.3d at 1205).

---

[31] R. Doc. 121 at 2-3; R. Doc. 122 at 2-6.

### i. Length of Time

The first factor to consider when determining whether a motion to intervene is untimely is the length of time during which the would-be intervenor knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene. Here, both Plaintiffs and Defendants argue that the two-month delay between imposition of the stay and filing the current Motion to Intervene renders said Motion untimely. Defendants also argue that Movants "have been on notice for almost *three years* that there was at least a possibility this litigation could result in a stay of *all* Louisiana Supreme Court elections."[32] Defendants base this argument on the relief requested in Plaintiffs' Complaint, including a request to enjoin the use of the current Supreme Court districts and enjoin Defendants from conducting any future Louisiana Supreme Court elections under the current method of elections.[33] Defendants also argue that as Movant Weimer was briefed by Defendant Attorney General, via memos "explaining the underlying issues, including the nature of Plaintiffs' requested statewide remedy" as well as via a Zoom meeting about said memos, he should have known of his interest in the case, at which time the timeliness clock began to run.[34]

> These arguments, however, are without merit. The Fifth Circuit has plainly
>
> rejected the notion that the date on which the would-be intervenor became aware of the pendency of the action should be used to determine whether it acted promptly. Courts should discourage premature intervention that wastes judicial resources. A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties.

*Sierra Club*, 18 F.3d at 1206 (citing *Stallworth*, 558 F.2d at 264-65) (internal citations omitted). According to Movants, the Parties failed to protect their rights "to participate in a democratic

---

[32] R. Doc. 122 at 3 (emphasis in original).
[33] *Id.* at 3-4; R. Doc. 1 at 2, 15.
[34] R. Doc. 122 at 4-5.

election in November in accordance with Louisiana law" when they "consent[ed] to a blanket and indefinite stay of Louisiana Supreme Court elections."[35] The Court agrees and finds that, as this was the point when the Parties, without question, no longer represented the Movants' interests, the imposition of the stay triggered the timeliness clock here. The question, then, is whether Movants acted promptly to intervene after learning of the stay.

With their Amended Motion to Intervene, Movants attach affidavits from each individual Movant attesting that none had prior knowledge of the Consent Motion to Stay prior to it being filed and that none was contacted by any of the Parties "in connection with any of the filings regarding the Consent Stay Order staying elections."[36] In his affidavit, Movant Weimer further attests that "[t]he fact that a stay was granted was not communicated to me as Chief Justice or to the members of the Louisiana Supreme Court as a group by any of the parties, either officially or unofficially" and that "[t]he fact a stay had been granted was discovered as a result of a colleague being advised of the stay some weeks after the stay was granted."[37] Thus, per Movants, they did not learn of the stay until some undetermined time after it was enacted, possibly "some weeks." Even assuming that Movants learned of the stay on the day the Order was signed, Movants filed their Motion only two months later. The Fifth Circuit has found motions to intervene filed both close to and longer than two months were timely. *See Swoboda*, 665 F.App'x at 314 (waiting 45 days before seeking to intervene not unreasonable and motion to intervene was timely); *Assoc. of Prof. flight Attendants*, 804 F.2d at 321 (finding motion to intervene that was filed five months after the timeliness clock began to run not untimely); *Sierra Club*, 18 F.3d at 1206 (motion to

---

[35] R. Doc. 125 at 5.
[36] R. Doc. 114-10 at 2 (affidavit of Greg Champagne); R. Doc. 114-11 at 2 (affidavit of Mike Tregre); R. Doc. 114-12 at 2 (affidavit of Craig Webre); *see* R. Doc. 114-9 at 2 (affidavit of John L. Weimer) ("I was not contacted by any of the parties in connection with any of the filings regarding the Consent Stay Order staying all Supreme Court elections.").
[37] R. Doc. 114-9 at 3.

intervene filed two months after movants became aware that the Forest Service would not protect their interests not untimely). The Court, therefore, finds Movants acted with reasonable promptness, and this factor weighs in favor of the timeliness of Movants' Motion.

### ii.    Prejudice to Existing Parties

The second timeliness factor to consider is the extent of the prejudice to the existing parties to the litigation as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case. However, the "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club*, 18 F.3d at 1206 (citing *Stallworth*, 558 F.2d at 265). Defendants do not address this issue, instead arguing—irrelevantly, here—that the existing Parties will be prejudiced by having "to reopen issues that have already been resolved in a manner approved by the Court" (*i.e.*, the stay) and that, somewhat inexplicably, allowing intervention would "disrupt ongoing settlement negotiations and a remedy for a path forward."[38] Defendants also argue that allowing an election in District Six to occur "will allow a judge to be elected from a malapportioned district … for a term of ten years."[39] These arguments, which focus on prejudice from allowing Movants to participate in the litigation, rather than prejudice resulting from the delay in seeking intervention, are inapposite here. Therefore, no Parties have argued—and the Court cannot surmise—any prejudice to the existing Parties caused by Movants filing the instant Motion two months after imposition of the stay, as opposed to sooner. As such, this factor weighs in favor of finding Movants' Motion timely.

---

[38] R. Doc. 122 at 6, 7.
[39] *Id.* at 8.

### iii. Prejudice to Movants

The third factor in determining timeliness is the extent of the prejudice that the would-be intervenors may suffer if intervention is denied. As argued by Defendants, Movants will not be prejudiced if denied intervention because the election is District Six will be stayed temporarily, "until such time as reapportionment is complete," meaning Movant Weimer "will remain in his current office until such time as an election is held" and he can "compet[e] as a candidate in the next scheduled election."[40] Defendants continue that "the Proposed Intervenor voters are not prejudiced either, because they will still have an opportunity to vote in the District Six election *when that election is held*, and they are not currently without a member of the Supreme Court from their district."[41] The Court disagrees, finding that Movants would be prejudiced if their Motion is denied, because the Court knows of no other procedural vehicle, short of filing a separate suit against the State, which would be duplicative and inefficient, to challenge the stay of elections currently in place. As such, the Court finds this factor also weighs in favor of finding Movants' Motion timely.

### iv. Unusual Circumstances

The final factor to consider in determining timeliness is the existence of unusual circumstances militating either for or against a determination that the application is timely. Defendants specifically argue that no unusual circumstances are present here.[42] Movants, however, argue that "the Consent Stay Order staying all elections, when only the District Six election is near in time, indicates a special and unusual circumstance."[43] The Court does find the impending election, with candidate qualifying beginning in just over a week, a circumstance

---

[40] *Id.*
[41] *Id.* (emphasis in original).
[42] *Id.*
[43] R. Doc. 114-1 at 6.

requiring expedited consideration of this issue. However, the Court does not find any unusual circumstances pertaining to the request to intervene are present here. As such, this factor is neutral. However, as all of the other three factors weigh in favor of finding Movants' Motion timely, the Court finds Movants' application was timely.

### b. Whether Movants Have an Interest in the Action

Having found Movants' Motion timely, the Court now turns to whether Movants have adequately asserted an interest in this action. Movants assert that they are "seeking to protect their right to vote in the scheduled November 8, 2022 Supreme Court election, a right which the Consent Stay Order abrogates."[44] Additionally, Movant Weimer asserts "a constitutional right as a candidate to appear on the ballot that is unfairly and unnecessarily infringed by the Consent Stay."[45]

Plaintiffs' response fails to address these interests substantively, instead focusing on how Movants' interests are distinct from the core issues in this case. Defendants also fail to directly address whether Movants have an adequate interest in the transaction that is the subject of the action. But in Defendants' analysis of the timeliness of the Motion to Intervene, Defendants assert that Movants "are not prejudiced [] because they will still have an opportunity to vote in the District Six election *when that election is held*."[46] Defendants further posit that Movant Weimer's interests are not adversely impacted by the Stay:

> The District Six election has only been temporarily stayed until such time as reapportionment is complete, which means that Proposed Intervenor Weimer will remain in his current office until such time as an election is held; nothing in the Consent Stay Order requires him to relinquish his seat early, nor does it prevent him from competing as a candidate in the next scheduled election.[47]

---

[44] R. Doc. 114-1 at 6.
[45] *Id.*
[46] R. Doc. 122 at 8 (emphasis in original).
[47] *Id.*

These arguments miss the point. The "transaction that is the subject of the action" is the Stay Order issued by the Court. *LULAC, Dist. 19*, 659 F.3d at 434 (consent decree modifying election protocol gave rise to right to intervene by voter in district). Movants have an interest in voting in the scheduled election for District Six's representative justice on the Louisiana Supreme Court. *Id.* The fact that the Stay may be temporary and that the Movants may be able to run for office or vote in a Supreme Court election for either District Six or some other, newly-created district in the future cannot undo the interest that exists today. Movants meet this test.

### c. Whether Movants are Sufficiently Able to Protect Their Interests

In evaluating whether Movants are impaired in their ability to protect their interests without intervening in this action, *LULAC, Dist. 19* is instructive again: "The disposition of this action may render Morton entirely unable to protect his interest in his pre-existing right to vote in elections of all five city council members because, as explained above, he appears to have no other procedural vehicle to seek the invalidation of the modified consent decree." *Id*. at 435. Similarly, the Court knows of no other procedural vehicle for Movants to seek the invalidation of the Stay issued in this matter. Accordingly, Movants meet this test.

### d. Whether Movants' Interests are Adequately Represented

The fourth and final requirement is that the applicant's interest must be inadequately represented by the existing parties to the suit. While the applicant has the burden of demonstrating inadequate representation, "this burden is minimal" and "not a substantial one." *Brumfield*, 749 F.3d at 345. Here, both Plaintiffs and Defendants oppose the relief being sought by Movants. Nothing more is needed; the existing Parties in this litigation do not adequately represent the interests of Movants. *See LULAC, Dist. 19*, 659 F.3d at 435 ("The existing parties here—LULAC and the city—oppose the relief that [the proposed intervenor] seeks; thus, they do not adequately

represent his interest" and this requirement is fulfilled.). This factor also is satisfied. Thus, having satisfied all four requirements, the Court finds Movants are entitled to intervention as of right in the instant litigation.

Finally, as the Court has found Movants entitled to intervention as of right, the Court need not address Movants' requested alternate relief of permissive intervention.

**B.    Conclusion**

Accordingly,

**IT IS ORDERED** that, as a subsequent Amended Motion to Intervene has been filed by the same individuals, the Motion to Intervene (R. Doc. 109), filed by John L. Weimer, Greg Champagne, Mike Tregre, and Craig Webre, is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Amended Motion to Intervene and for Temporary Restraining Order and Preliminary Injunction (R. Doc. 114), filed by John L. Weimer, Greg Champagne, Mike Tregre, and Craig Webre, is **GRANTED IN PART**. Pursuant to Rule 24 of the Federal Rules of Civil Procedure, John L. Weimer, Greg Champagne, Mike Tregre, and Craig Webre may intervene in this litigation as requested. This ruling, however, does not address the Movants' request for a temporary restraining order and preliminary injunction, which issues remain pending before this Court.

Signed in Baton Rouge, Louisiana, on July 11, 2022.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**