IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,** *et al.*, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 3:19-cv-00479 -JWD-EWD |
| **STATE OF LOUISIANA,** *et al.*, | § § § | |
| *Defendants*. | § § | |

## STATUS REPORT

**A.    JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a) and 28 U.S.C. § 1331.

2. Defendant, R. Kyle Ardoin, in his capacity as Secretary of State of Louisiana, acknowledges that the U.S. Fifth Circuit Court of Appeal has previously determined that this Court has subject matter jurisdiction over this case despite the *Chisom* decree. *See Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021). Nevertheless, Louisiana Supreme Court districts are determined and changed by enactment of two-thirds of the legislature. The Secretary of State submits that his role is limited to upholding the law as enacted by the legislature. Accordingly, there is no case or controversy with respect to the claims made against the Secretary of State, and the court lacks Art. III jurisdiction.  Plaintiffs contest this assertion by the Secretary of State.

Louisiana by statute refuses any waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts. *See* La. R.S. 13:5106(A); *See also Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 281 (5th Cir. 2002) (wherein the Fifth Circuit has recognized Louisiana's refusal to waive its Eleventh Amendment immunity).

B.   **BRIEF EXPLANATION OF THE CASE**

1.   **Plaintiffs' Claims**: Plaintiffs claim that the current voting districts for the Louisiana Supreme Court ("the Supreme Court") have the effect of denying African American voters an equal opportunity to participate in the political process to elect candidates of their choice in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. Although the voting-age population of Louisiana is approximately 30% African American, African Americans comprise a majority in only one of the seven Supreme Court electoral districts (i.e., 14% of the districts). Six of the seven voting districts for the Supreme Court are majority-white. As a result of the demographics of those districts and racially polarized voting, African Americans have been prevented from equal participation in the election of justices to the Supreme Court. Although Supreme Court Justices have been elected in Louisiana since 1904, the Court has had only two African American justices in its history. Both were elected from the sole majority-black district in the State -- a district created as a result of voting rights litigation.

   Louisiana's African-American population is sufficiently large and geographically compact to constitute a majority in two fairly drawn, constitutional single-member districts for the Supreme Court; the state's African American population is politically cohesive; and the State's white voting-age majority votes sufficiently as a bloc to enable it to defeat African-American voters' preferred candidates in six of Louisiana's seven Supreme Court districts. These districts have not been redrawn since 1999. Because of these circumstances, as well as the historical, socioeconomic and electoral conditions of Louisiana, Plaintiffs allege that the Supreme Court districts as currently drawn violate Section 2 of the Voting Rights Act.

The Fifth Circuit has already considered Defendants' arguments concerning this Court's jurisdiction and the relationship between the *Chisom* decree, on the one hand, and the relief Plaintiffs seek in this case, on the other. The Fifth Circuit stated:

> Three decades ago, a federal consent decree—the "*Chisom* decree"—created Louisiana's one majority-black supreme court district. In this appeal, we are asked whether that decree also governs the other six districts. The answer is no.
>
> The district court therefore rightly denied Louisiana's motion to dismiss this Voting Rights Act suit for lack of jurisdiction. The state argued that the Chisom decree centralizes perpetual federal control over all supreme court districts in the Eastern District of Louisiana, which issued the decree.
>
> The district court rejected that reading for good reason: it is plainly wrong. Louisiana would inflate the *Chisom* decree beyond its terms and the lawsuit that spawned it. The present suit, however, addresses a different electoral district untouched by the decree. . . .

14 F.4th 366, 368 (5th Cir. 2021). The Fifth Circuit reasoned that the *Chisom* "suit had nothing to do with the other districts and, accordingly, the decree has nothing to say about how they are to be apportioned." *Id.* at 372. In light of these findings, Plaintiffs view Defendants' ongoing attempts to conflate this case with *Chisom* as nothing more than an attempt to create further delay.

The Louisiana legislature did not consider redistricting or reapportionment of the districts for electing justices to the Louisiana Supreme Court during or before its Regular Session commencing in March 2022. The Parties, however, requested and were granted, on July 19, 2022, an order staying and administratively closing the case in order to pursue settlement. (See Dkt. No. 137). The Parties made efforts to negotiate a resolution of the litigation, but reached an impasse as of July 26, 2023. (See Dkt. No. 166). During that time, the Louisiana legislature failed to consider bills targeted at redistricting or reapportionment of the districts for electing justices to the Louisiana Supreme Court during its Special Session commencing in April 2023.

3

This case has been pending for over four years. There is no reason to further delay discovery and resolution of this case on the merits.

2. **Defendant's Claims**:

Defendant Secretary of State: The Court lacks Art. III jurisdiction over the claims asserted against his office in this case. Otherwise, the Secretary of State maintains and adopts the defenses set out by the State of Louisiana.

Defendants, State of Louisiana, by and through the Attorney General of Louisiana, and the Louisiana Secretary of State, maintain that this case should go through a normal course of discovery and motion practice before proceeding to trial, and the issues outlined below need to be weighed by this Court.[1]

First, a decision in the matter of *Chisom v. State of Louisiana*, No. 22-30320 (5th Circ.) is critical before proceeding to trial in this case because it will impact the territory that should be considered for redistricting of the Louisiana Supreme Court. *Chisom* is currently pending with the Fifth Circuit on the issue of whether the consent judgment should be dissolved. The State requested dissolution of the consent judgment under the first or third prong of Rule 60 (b)(5), on the basis that it substantially complied with the consent judgment's terms. The current Supreme Court districts are malapportioned, and any redistricting should consider the entire territory of the State. The State believes it is necessary to terminate or decide the *Chisom* consent decree issue in order for this litigation to go forward in any meaningful way. Any addition or modification of voters to a district impacts other districts; therefore, the redistricting process should consider the entire Supreme Court.

---

[1] This remains a preliminary assessment subject to Defendants on-going investigation of facts. Nothing in this Status Report should be construed as a waiver of any other defense or admission of any fact. Defendants reserve all rights to amend consistent with the Court's precedents and the Federal Rules of Civil Procedure.

Second, federal courts have already wrestled with configuring a 7-district map with two majority-minority districts. Three times the Western District of Louisiana rejected a 7-district congressional map with two majority minority districts as a racial gerrymander. *See e.g. Hays v. State*, 936 F. Supp. 360, 362 (W.D. La. 1996) ("For yet a third time . . . the redistricting plan enacted by the Legislature violates the equal protection rights of the Plaintiffs"). Currently, the issue of two majority-minority districts for a 6-district congressional map is pending with the Fifth Circuit on a preliminary injunction. *Robinson v. Ardoin*, 22-30333 (5th Cir.). Defendants believe that the preliminary injunction is moot since the election at issue occurred; however, the matter should be scheduled for a trial on the merits.

Third, the Voting Rights Act does not require racially proportionate representation. Section 2 of The Voting Rights Act requires only "the potential to elect," not a guarantee of electoral victory or a guarantee to any minority group that its preferred candidate must win to avoid violating federal law. *Magnolia Bar Association*, 793 F. Supp. 1386, 1421 Note 14 (S.D. Miss. 1992); See Also "[Section 2] does not require a showing of proportional representation at the liability phase, nor does it require proportional representation as a remedy."

Fourth, the Plaintiffs cannot show that they "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendants, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997); *accord Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (en banc); *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010).

Fifth, the Plaintiffs will not be able to show by a preponderance of the evidence, the following three preconditions are met for Supreme Court election districts: (1) the affected minority group is sufficiently large and geographically compact to constitute a voting age majority

in a district; (2) the minority group is politically cohesive; and (3) the majority votes sufficiently as a bloc that it is usually able to defeat the minority group's preferred candidate. *NAACP v. Fordice*, F.3d 361, 366 (5th Cir. 2001) (*Gingles*, 478 U.S. at 50-51).

Sixth, the Plaintiffs will not be able to show that the totality of the circumstances show that African-American voters have less opportunity than other members of the electorate to participate in the political process and to elect candidates of their choice to the Supreme Court in violation of Section 2 of the Voting Rights Act.

**C.    PENDING MOTIONS**

There are no pending motions in this case at this time.

The Attorney General, on behalf of the State of Louisiana, petitioned the district court in the Eastern District to terminate or dissolve the Consent Judgment pending in the matter of *Chisom, et al. v. Jindal, et al.*, U.S.D.C. (Eastern District), Docket No. 86-4075. The matter is pending before the Fifth Circuit. *Chisom v. State of Louisiana*, No. 22-30320 (5th Circ.) Any malapportionment which exists among all seven districts with the Louisiana Supreme Court can only be remedied if the court dissolves or terminates the *Chisom* consent decree.

**D.    ISSUES**

The principal legal issues, which are in dispute, are as follows:[2]

1.    Does the Voting Rights Act apply to the Judiciary?

2.    (a) As currently drawn, do the voting districts for the Supreme Court have the effect of denying African American voters an equal opportunity to participate in the political process to

---

[2] Plaintiffs do not agree that item numbers 1, 2(b), 4, 5, and 6 are "issues" before the Court. In their initial joint Status Report in September 2019, the parties jointly identified items 2(a) and 3 as the two issues raised in this case. Plaintiffs maintain that those are the two issues at stake in this case. Plaintiffs dispute the other five "issues" newly-raised by Defendants in this report (i.e., items 1, 2(b), 4, 5, and 6) and see this as a further attempt to conflate this case with *Chisom* and to create delay.

elect candidates of their choice in violation of Section 2 of the Voting Rights Act? (b) Does one or more of the districts have the effect of denying non-African-American voters an equal opportunity to participate in the political process to elect candidates of their choice in violation of the Voting Rights Act of 1965?

      3.     Can two constitutional single member African American-majority districts be drawn to enable African Americans an equal opportunity to elect Supreme Court candidates of their choice, and is it required by Section 2 of the Voting Rights Act?

      4.     Is it legally permissible for race to be the primary consideration in drawing election districts?

      5.     Whether the number of voters in the *Chisom* district is so badly out of proportion to the number of voters in other Supreme Court districts that it dilutes the voting strength of voters in the other districts in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the U.S. Constitution.

      6.     Whether a constitutional reapportionment/redistricting plan can be drawn without substantially altering the *Chisom* district.

**E.    DAMAGES**

This case does not involve a traditional calculation of monetary damages. Plaintiffs seek declaratory and injunctive relief pursuant to 52 U.S.C. § 10301. Plaintiffs also seek an award of their reasonable attorneys' fees and the costs and disbursements of maintaining this action pursuant to 52 U.S.C. § 10310(e) and 42. U.S.C. § 1988.

The Secretary of State avers that the attorney fees calculated in accordance with the *Lodestar* formula are due by the Plaintiffs should the Secretary of State prevail. Plaintiffs contest this assertion by the Secretary of State.

**F.    SERVICE**

All Defendants have been served and there are no unresolved issues concerning service of process and personal jurisdiction.

**G.    DISCOVERY**

    1.    **Initial Disclosures**:

        A.    Have the initial disclosures required under FRCP 26(a)(1) been completed?  [**X**] YES [ ] NO

    2.    **Discovery in Progress:**

    No discovery has been taken at this time.

    3.    **Protective Orders and Limitations on Discovery:**

The parties do not anticipate any discovery that will require protective orders or limitations on discovery, unless Plaintiffs intend to seek or access the confidential portions of the State's voter files or information subject to privilege.

The State of Louisiana does not believe that expert discovery is feasible before the Plaintiffs provide an illustrative plan and the *Chisom* consent decree is terminated or modified.  It is impossible to ask any expert to craft a redistricting plan and formulate opinions about the entire territory of Louisiana and the Supreme Court districts without taking account of the *Chisom* district.

    4.    **Discovery from Experts**:

    Identify the subject matter(s) as to which expert testimony will be offered:

        a.    **Plaintiffs' Expert Topics:**  Plaintiffs anticipate submitting expert witness testimony concerning (1) the historical, socioeconomic and electoral conditions in Louisiana generally and with regard to judicial elections specifically; (2) analyses showing that the State's

8

African American population is politically cohesive; (3) analyses showing that the State's white voting-age majority votes sufficiently as a bloc to enable it to defeat African American voters' preferred candidates; (4) Louisiana's history of official voting discrimination; (5) Louisiana's history of racially polarized voting; (6) Louisiana's use of enhancing practices; (7) socio-economic barriers to voting in Louisiana; (8) analyses showing racial appeals in campaigns; (9) analyses showing the persistent under-representation of African Americans in public office in Louisiana; and (10) analyses showing that two constitutional majority-African-American Supreme Court districts can be drawn.

    b.  **<u>Defendants' Expert Topics:</u>** Defendants State of Louisiana and Secretary of State will likely submit expert reports to rebut one or more of the expert reports to be submitted by Plaintiffs, and may submit one or more expert reports covering subjects not listed above.

**H. PROPOSED SCHEDULING ORDER**

  1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline:

   Initial disclosures have been completed.

  2. Recommended deadlines to join other parties to amend the pleadings:

   Joint proposal: **November 31. 2023.**

  3. Filing all fact discovery motions and completing all discovery except experts:

   Joint proposal: **February 29, 2024**.

  4. Disclosure of identities and resumes of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

   Plaintiffs' experts:

9

        Joint proposal: **April 30, 2024.**

    Defendants' experts:

        Joint proposal: **June 28, 2024.**

5. Rebuttal experts (if any):

    Joint proposal: **July 31, 2024.**

6. Exchange of expert reports:

    Plaintiffs' experts:

        Joint proposal: **April 30, 2024.**

    Defendants' experts:

        Joint proposal: **June 28, 2024.**

    Rebuttal experts (if any):

        Joint proposal: **July 31, 2024.**

    Sur Rebuttal experts (if any):

        Joint proposal: **August 30, 2024.**

7. Completion of discovery from experts:

    Joint proposal: **October 15, 2024.**

8. Filing dispositive motions and *Daubert* motions:

    Joint proposal: **December 13, 2024.**

    Defendants' proposal: 30 days after the close of expert discovery.

9. All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's

schedule, within the following general parameters.[3] The parties should not provide any proposed dates for these remaining deadlines.

    a.    Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

    b.    Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

    c.    Deadline to file responses to motions in limine (approximately 22-24 weeks after dispositive motion deadline).

    d.    Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

    e.    Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

    f.    Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

    g.    Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

**I.    TRIAL**

1. Has a demand for trial by jury been made? [ ] YES [ **X** ] NO

---

[3] The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only. The actual dates may vary depending on the complexity of a particular case. All requests for subsequent changes to the deadlines set in the scheduling order under paragraph numbers 7 or 8 must be by motion directed to the presiding judge.

11

2. Estimate the number of days that trial will require: **Seven days**

    a) Defendants request the same number of days as Plaintiffs for trial.

**J.   OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

[] YES [X] NO

   i.   If the answer is *yes*, please explain:

   ii.  If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.** [] YES [X] NO

**K.   SETTLEMENT**

1. Please set forth what efforts, if any, the parties have made to settle this case to date.

    The Parties engaged in extensive informal settlement discussions and appeared before Magistrate Johnson for numerous settlement conferences but reached an impasse without finding a resolution.

2. Do the parties wish to have a settlement conference:  [] YES [X] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial?

**L.   CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge. Indicate

whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:  [ ] YES [**X**] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the <u>attached form</u> to indicate your consent.**

Dated: August 24, 2023

/s/ *Meryl Macklin*
Meryl Macklin*
Logan Rutherford*
Kristin Howard Corradini*
Adam Shaw*
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center
7th Floor
San Francisco, California 94111
Telephone (415) 675-3400
Facsimile (415) 675-3434
meryl.macklin@bclplaw.com
logan.rutherford@bclplaw.com
kristin.corradini@bclplaw.com

Arthur R. Thomas (La. Bar Roll #12797)
Arthur R. Thomas & Associates, LLC
3313 Government Street
Baton Rouge, Louisiana 70806
Telephone (225) 802-4199
Artthomas51@gmail.com

Ezra Rosenberg*
James Tucker*
Jennifer Nwachukwu*
Counsel for Voting Rights Project
Lawyers' Committee for Civil Rights Under Law
1500 K. Street NW, Suite 900
Washington, D.C. 20005
Telephone (202) 662-8329
Facsimile (202) 783-0857
erosenberg@lawyerscommittee.org
jtucker@lawyerscommittee.org
jnwachukwu@lawyerscommittee.org

*Counsel for Plaintiffs Louisiana State Conference of the National Association for the Advancement of Colored People, Anthony Allen, and Stephanie Anthony*

*admitted *pro hac vice*

Respectfully submitted,

JEFF LANDRY
ATTORNEY GENERAL

/s/ *Jeffrey Wale*
Jeffrey M. Landry (La. Bar Roll #29942)
Angelique D. Freel (La. Bar Roll #28561)
Jeffrey Wale (La. Bar Roll #36070)
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
Post Office Box 94005
Baton Rouge, Louisiana 70802
Telephone (225) 326-6766
Facsimile (225) 326-6793
landryj@ag.louisiana.gov
freela@ag.louisiana.gov
walej@ag.louisiana.gov

Jason Torchinsky (VSB 47481)*
Phillip M. Gordon (TX 24096085)*
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
15405 John Marshall Highway
Haymarket, Virginia 20169
Telephone (540) 341-8808
Facsimile (540) 341-8809
jtorchinsky@holtzmanvogel.com
pgordon@holtzmanvogel.com

*admitted *pro hac vice*

*Counsel for Defendant State of Louisiana*

/s/ *John C. Walsh*

SHOWS, CALI & WALSH, L.L.P.
John C. Walsh (LA 24903)
Jeffrey K. Cody (LA 28536)
Caroline M. Tomeny (LA 34120)
628 St. Louis Street (70802)
P.O. Box 4425
Baton Rouge, LA 70821

14

Telephone: (225) 346-1461
Facsimile: (225) 346-1467
john@scwllp.com
jeffreyc@scwllp.com
caroline@scwllp.com

Jennifer O. Bollinger (La. Bar Roll #32349)
OFFICE OF THE LOUISIANA SECRETARY OF STATE
P.O. Box 94125
Baton Rouge, Louisiana 70804
Telephone (225) 922-2880
Jennifer.bollinger@sos.la.gov

*Counsel for Defendant R. Kyle Ardoin, in his capacity as Secretary of State of Louisiana*