# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LOUISIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,** *et al.*

**VERSUS**

**STATE OF LOUISIANA,** *et al.*

**CIVIL ACTION**

**NO. 19-479-JWD-SDJ**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Attorney's Fees* (Doc. 138) filed by Intervenors John L. Weimer, Greg Champagne, Mike Tregre, and Craig Webre, in their individual capacity ("Intervenor Voters") and John L. Weimer in his capacity as a candidate for Louisiana Supreme Court District Six ("Intervenor Candidate") (collectively, the "Intervenors"). Defendants the State of Louisiana, through Attorney General Jeff Landry, and Secretary of State R. Kyle Ardoin ("Defendants") oppose the motion (Doc. 143). Intervenors have filed a reply (Doc. 144). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Intervenors' *Motion for Attorney's Fees* is granted in part and denied in part.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In 2019, the Louisiana State Conference of the National Association for the Advancement of Colored People ("NAACP"), Anthony Allen, and Stephanie Anthony (collectively "Plaintiffs") filed suit against Defendants, seeking declaratory and injunctive relief to have the State redraw the district lines for Supreme Court districts. (Doc. 1 at 2.) On May 2, 2022, the Defendants filed a consent motion to stay all Louisiana Supreme Court elections until the voting districts could be

reapportioned. (Doc. 100 at 1.) On May 4, 2022, this Court granted the consent motion and stayed all Louisiana Supreme Court elections. (Doc. 101 at 1.)

The Intervenors filed a *Motion to Intervene* on June 29, 2022, seeking a partial lift of the stay order. (Doc. 109 at 1.) The Intervenors were voters located in District Six, and one of them wished to qualify to run for Supreme Court Justice in November 2022. (*Id.* at 2, Doc. 114 at 1–2.) Qualification for candidates to run opened on July 20, 2022, and closed on July 22, 2022. (Doc. 109-2 at 2.) The Intervenors argued that because District Five, not District Six, was the target of the reapportionment efforts, District Six's election should be able to continue. (*Id.* at 3.)

Intervenors amended the *Motion to Intervene* on July 5, 2022, filing the *Amended Motion to Intervene* and asking for a temporary restraining order and preliminary injunction to allow the election to move forward. (Doc. 114.) An *Answer, Counterclaim, and Cross-Claim* was filed with the *Amended Motion to Intervene* as Exhibit 1. (Doc. 114-4.) In the *Answer*, Intervenors prayed for an award of attorney's fees and costs. (*Id.* at 12.) There was no prayer for attorney's fees in the *Counterclaim* or the *Cross-Claim*. (Doc. 114-4.)

Defendants opposed the intervention and the temporary restraining order. (Doc. 122, Doc. 126.) This Court granted the *Amended Motion to Intervene* in part on July 11, 2022, allowing the Intervenors to intervene in the litigation without addressing the temporary restraining order. (Doc. 129.) On July 13, this Court granted the *Motion to Partially Lift Consent Stay Order* from the original *Motion to Intervene* and dissolved the stay on Louisiana Supreme Court elections. (Doc. 135.) On July 27, 2022, Intervenors filed the present *Motion for Attorney's Fees*, requesting fees from Defendants totaling $41,845.00. (Doc. 138 at 1.)

## II.    DISCUSSION

### A. Parties' Arguments

#### 1.  *Intervenors' Memorandum in Support (Doc. 138-1)*

##### a.  Prevailing Party

Intervenors first argue that they are entitled to attorney's fees under 42 U.S.C. § 1988. (Doc. 138-1 at 5.) They say that § 1988 is applicable because they were the prevailing party in an action to enforce 42 U.S.C. § 1983. (*Id.* at 7.) Intervenors cite Fifth Circuit cases saying that for a plaintiff to be a prevailing party: " '(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered.' " (*Id.* at 6 (quoting *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013)).) Intervenors assert that to be a prevailing party, the party only needs to succeed on a significant issue, not the main claim of the case. (*Id.* at 6–7.) Intervenors point to an election case from the Fifth Circuit, where attorney's fees were awarded based on interim relief that allowed voters to vote in the November 2016 elections. (*Id.* at 7 (citing *Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021)).)

Intervenors say they have met each requirement to be considered a prevailing party. (*Id.* at 7–8.) They say that the judicially-sanctioned relief was the granting of the *Motion to Partially Lift Consent Stay Order* and the vacating of the stay order, allowing the election to proceed. (*Id.* at 8.) Intervenors argue that the lifting of the stay order materially altered the relationship between them and Defendants because without the order, Intervenor Voters would not have been allowed to vote and Intervenor Candidate would not have been able to run in the November 2022 election. (*Id.*) Finally, Intervenors assert that the order was not purely technical because it caused an election to move forward that would not have occurred absent intervention. (*Id.*) Intervenors point to the order

3

from the Court, which articulated that the challenge by the Intervenors made the issue with the

stay order "specific and concrete." (*Id.* (citing Doc. 135 at 12–13).)

b.  Calculation of Attorney's Fees

Intervenors attached invoices detailing the attorney's fees as Exhibits 1 and 2. (Doc. 141-

1 and 141-2.) The proposed rates and hours are as follows: Eva J. Dossier, 55 hours at $175 per

hour; Richard C. Stanley, 57.10 hours at $225 per hour; John P. D'Avello, 94.40 hours at $150 per

hour; Matthew J. Paul, 29.10 hours at $175 per hour; Brittany Y. Kennedy, 1.60 hours at $75 per

hour. (*Id.*) Intervenors used the maximum hourly fee schedule from the Louisiana Department of

Justice, saying that these rates are lower than those that have been given by this Court in the past.

(Doc. 138-1 at 10 n.8.) In total, Intervenors billed 237.20 hours and are asking for $41,845.00 in

attorney's fees. (Doc. 138-1 at 11.)

**2.  *Defendants' Opposition (Doc. 143)***

a.  Prevailing Party

Defendants first address the issue of whether Intervenors should be considered a prevailing

party under § 1988. (Doc. 143 at 2.) Defendants cite *Farrar v. Hobby*, saying that there needs to

be " 'actual relief on the merits of his claim' " for a party to be prevailing. (*Id.* (quoting *Farrar v.

Hobby*, 506 U.S. 103, 111 (1992)).) They first say that this claim for attorney's fees is actually

pursuant to Intervenors' crossclaim against them, which has not been adjudicated on the merits.

(*Id.* at 3.) They acknowledge that an injunction may satisfy this requirement but argue that the

Intervenors are still not prevailing parties. (*Id.*) Defendants say that instead of an injunction being

granted, an injunction was dissolved, which should not be considered relief on the merits of the

claim. (*Id.*) Defendants assert that the Court's decision to dissolve the stay was unrelated to the

4

crossclaim against Defendants, and since the crossclaim was not adjudicated, Intervenors are not entitled to attorney's fees. (*Id.*)

Defendants argue that because Intervenors were unsuccessful on nearly all of their claims, they cannot be considered prevailing parties. (*Id.*) Defendants assert that "[w]hile Intervenors may have gotten what they wanted, they did not get *what they asked for*." (*Id.* at 4 (emphasis in original).) The basis for this assertion is that Intervenors requested a number of different kinds of relief, including more expanded relief in the *Amended Motion to Intervene*, that were denied in favor of granting the original *Motion to Intervene* and dissolving the stay. (*Id.* at 4–5.) Defendants say that since the Court did not address the § 1983 claim that was in the crossclaim, there has been no adjudication and Intervenors cannot request attorney's fees. (*Id.* at 5.) They conclude by saying that because the Intervenors did not get the specific relief that they requested in their final request for relief, their *Motion* should be denied. (*Id.* at 6.)

### b.  State Action

Defendants claim the consent stay order was not a result of state action, as the state defendants were simply complying with a federal court order by stopping the Supreme Court elections. (*Id.* at 7–8.) They say that the actions of a federal court would not be covered under § 1983. (*Id.* at 8.) Defendants maintain that although they and Plaintiffs jointly moved the Court to enter the stay order, that power was not exclusively a power that a state actor could exercise. (*Id.* at 9.) They assert that "any party to a case, whether private or public, can request a stay," but the ultimate actor is the court. (*Id.*)

### c.  Notice

Defendants argue that attorney's fees are items of special damage and should be specifically pleaded. (*Id.* at 10 (citing *United Indus. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 764 (5th

Cir. 1996)).) Defendants say that although requests for attorney's fees must be specifically pled, if

the other party is on notice that attorney's fees are being sought, then the party may recover. (*Id.*

at 11.) Defendants assert that there was no notice here. (*Id.*) Defendants look to the Intervenors'

*Answer, Counterclaim, and Cross-Claim*, arguing that although there is a request for attorney's

fees, it was against Plaintiffs, not Defendants. (*Id.*) Defendants say that they were unfairly

surprised by the request for attorney's fees, especially since Plaintiffs also opposed the

intervention. (*Id.* at 11–12.)

### d.  Excessive Fees

Finally, Defendants argue that the fee award requested by Intervenors is excessive. (*Id.* at

12.) Defendants contend that the first *Motion to Intervene* was so deficient that it could not be

reviewed. (*Id.* at 13.) They point to one of the factors for determining attorney's fees—the skill

required—and say that an intervention is not very advanced, even though it took nearly 50 hours

of work to complete. (*Id.*) Defendants outline how the *Motion to Intervene* was deficient. (*Id.* at

13–14.) Defendants say that the 49.1 hours that were spent creating the first *Motion to Intervene*

were excessive and that the 62.5 hours used to create the *Amended Motion to Intervene* were even

more excessive. (*Id.* at 15.) Defendants also challenge the 29.2 hours spent preparing the instant

*Motion for Attorney's Fees* and 65.8 hours preparing for a potential emergency appeal. (*Id.* at 15–

16.)

Defendants object generally to block billing, but only specify one entry as being block

billed. (*Id.* at 16.) They argue that Attorney D'Avello's bill on July 6, 2022, references 4.10 hours

that were used for multiple tasks, but no designation of how long each task took. (*Id.*) Defendants

request that if fees are to be awarded, they be reduced due to block billing. (*Id.* at 17–18.) In total,

Defendants object to 49.10 hours relating to the initial filing, 62.50 hours preparing the *Amended*

*Motion to Intervene*, 65.80 hours preparing an appellate strategy, and 29.20 hours preparing the *Motion for Attorney's Fees*, totaling 206.60 hours. (*Id.* at 18.)

### 3. Intervenors' Reply (Doc. 144)

Intervenors reiterate that they are prevailing parties, as the Fifth Circuit in *Walker v. City of Mesquite* allowed attorney's fees when a remedial order was vacated in response to a request for a temporary restraining order, a preliminary injunction, and a permanent injunction. (Doc. 144 at 3–4 (citing *Walker v. City of Mesquite*, 313 F.3d 246 (5th Cir. 2002)).) The Fifth Circuit allowed attorney's fees because the plaintiffs achieved the result they were seeking. (*Id.* at 4 (citing *Walker*, 313 F.3d at 249–250).) Intervenors argue that the same is applicable here; their goal was to stop the violation of constitutional rights, which was achieved through the dissolution of the stay order. (*Id.*)

Intervenors point to *Walker* for the issue of whether there was state action, saying that the Fifth Circuit there held that state actors complying with official or legal requirements that are unconstitutional is not a special circumstance that would allow the denial of attorney's fees. (*Id.* (citing *Walker*, 313 F.3d at 251).) Intervenors argue that Defendants "affirmatively urged" the court to enter an order that infringed on the constitutional rights of the Intervenors and fought to keep the stay order in place. (*Id.* at 4–5.) Intervenors say that they cannot request attorney's fees from Plaintiffs as they are not state actors and are thus not subject to §§ 1983 and 1988. (*Id.* at 5.)

Intervenors argue that Defendants are state actors, as they are the Attorney General and the Secretary of State. (*Id.*) "They used their titles as state officers in federal litigation to interfere with the scheduled election in District Six and attempt to 'create a [new] system' governing Louisiana Supreme Court voting." (*Id.* (alteration in original) (quoting Doc. 100 at 1).)

Intervenors respond to Defendants' allegations about any deficiencies in the *Motion to Intervene* by saying that they are an "untimely attempt to reopen the litigation on the merits." (*Id.* at 6.) Intervenors say that they did not need to cite § 1983 in the intervention in order to receive attorney's fees pursuant to § 1988. (*Id.*) They cite a Fifth Circuit case which says that § 1983 does not need to be cited if the complaint alleges enough facts that would support a § 1983 claim. (*Id.* (citing *Noatex Corp. v. King Const. Co. of Houston, LLC*, 609 F. App'x 164, 167 (5th Cir. 2015)).)

Intervenors assert that the result that was achieved in this case was excellent and the fees that they are requesting are modest considering the amount of work done. (*Id.* at 7.) They say that they were efficient, as they prevailed within a month of their first pleading. (*Id.*) Intervenors explain the time used researching emergency appeals by saying since (1) Defendants would not concede any issues, (2) there was an imminent deadline of July 20, 2022, and (3) it was possible that the district court would not rule in time or in their favor, they would have had to pursue other avenues to get relief. (*Id.* at 7–8.) Intervenors argue that research into the appellate avenues was reasonable considering the information they had at the time. (*Id.* at 8.)

Finally, Intervenors say that the rates that were used to calculate the amount they asked for in the *Motion for Attorney's Fees* were well below market rate. (*Id.* at 9.) They point to cases from this Court where fees of $350 per hour for lead counsel and $275 per hour for associate attorneys were reasonable in the Middle District of Louisiana. (*Id.* (citing *Advocacy Ctr. v. Cain*, No. 12-508, 2014 WL 1246840, at *6 (M.D. La. Mar. 24, 2014) (Jackson, C.J.)).) Intervenors use these rates to show that the market price for their services is $69,192.50, so the $41,845.00 that was requested is already a reduction from the lodestar amount. (*Id.* at 10.)

### B. Law and Analysis

In sum, the Court will grant in part and deny in part the Intervenors' *Motion for Attorney's Fees*. The Intervenors are a prevailing party, as they received the relief that they were seeking. The Defendants are state actors under § 1983. Although Intervenors did not pray for attorney's fees in the claim against Defendants, Defendants knew about the prayer for attorney's fees in the *Answer* and were on notice that fees would be sought. Additionally, Defendants were the primary party that opposed the intervention and the dissolution of the stay order, so they were on notice that fees would be sought against them. Finally, Intervenors are entitled to fees, but they will be decreased to account for block billing. Accordingly, the Court will award $36,442.25 for Intervenors' attorney's fees.

#### 1. Prevailing Party

42 U.S.C. § 1988 provides, in pertinent part, "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. 1988(b). The Supreme Court defined "prevailing party" in *Farrar*. In that case, the Court examined previous rulings and said " '[t]o be considered a prevailing party within the meaning of § 1988,' we held, 'the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.' " *Farrar*, 506 U.S at 111 (quoting *Tex. State Tchrs. Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)). The Supreme Court further said that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. . . . Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." *Id.* In summary, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters

the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12.

Section 1988 requires that relief be granted pursuant to certain sections of Title 42, including § 1983. The party seeking attorney's fees does not, however, need to specifically plead § 1983 in their request for relief. The Fifth Circuit has held "that a party may recover § 1988(b) fees without pleading § 1983—if his complaint presents a claim for which § 1983 affords succor." *Noatex Corp.*, 609 F. Appx. at 167. Here, Intervenors did not cite to § 1983 in their *Motion to Intervene* or *Amended Motion to Intervene*, but the relief that is requested is that which is provided for in § 1983. In the first paragraph of the *Motion to Partially Lift Consent Stay Order*, Intervenors assert their right to vote and elect a Supreme Court Justice. (Doc. 109-2 at 2.) As stated in the ruling granting the lifting of the stay order, with the stay order in place, "Intervenor Voters will indefinitely lose their right to vote for a Louisiana Supreme Court justice in their district, and Intervenor Candidate must indefinitely postpone his candidacy . . . ." (Doc. 135 at 12.) The right to vote is a right that is "secured by the Constitution and laws" and is thus subject to protection through § 1983. 42 U.S.C. § 1983. The Court finds that § 1988 is applicable to this case and will continue the analysis on whether Intervenors are a prevailing party.

In this case, Intervenors initially sought a partial lift of the stay of the Louisiana Supreme Court elections. They later asked for a temporary restraining order that would allow the election to move forward. While the methods were different, the Intervenors had the same goal throughout their involvement in this case: stop the unconstitutional limitation on voters' rights in District Six, specifically pertaining to the Louisiana Supreme Court Election. This Court granted that relief when it dissolved the stay order. (Doc. 135.) This relief directly benefitted Intervenors, as the election was allowed to take place and Intervenor Candidate was able to run.

The final element, that the legal relationship between the parties alters the defendant's behavior in a way that benefits the Intervenor, is also met. Absent the intervention, the stay that Defendants advocated for would have been in place, preventing Intervenors from exercising their right to vote in the Louisiana Supreme Court election. With a judgment on the merits—the dissolution of the stay order—Intervenors no longer had a barrier to voting. Thus, the Court finds that Intervenors are prevailing parties.

### 2.  *State Action*

Section 1983 requires action "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or District of Columbia." 42 U.S.C. § 1983. The Supreme Court has held that there is a two-part test for determining whether a deprivation of a federal right is fairly attributable to the State.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). In *West v. Atkins*, the Supreme Court further said, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." 487 U.S. 42, 50 (1988).

Although Defendants argue that they were not state actors because any person could have moved for the stay, with the court being the ultimate actor, Defendants were acting with the authority granted them by the state. Defendants are empowered to represent the state in federal court, and they used that power to request that the Court stay the Supreme Court election, thus violating the rights of voters. Defendants did not simply comply with a court order; they advocated

for the stay and argued against the intervention and the lifting of the stay. These actions indicate that Defendants were state actors for the purposes of § 1983.

### 3. *Notice*

In the Fifth Circuit, attorney's fees are considered to be special damages, which fall under the higher pleading standards of Federal Rule of Civil Procedure 9(g).[1] *See United Indus.*, 91 F.3d at 764 ("While this Circuit has not specifically held that attorneys' fees are items of special damage that must be specifically pleaded, we have intimated that this is so") (citing *Crosby v. Old Republic Ins. Co.*, 978 F.2d 210, 211 n.1 (5th Cir. 1992). Rule 9(g) requires that special damages must be specifically stated. Fed. R. Civ. Proc. 9(g).

While attorney's fees must be specifically pled, there is an exception when the other party is on notice. The Fifth Circuit has acknowledged that there are times when the court may consider a request for fees without a specific pleading, particularly when the circumstances are such that the opposing party is on notice that attorney's fees would be sought. *United Indus.*, 91 F.3d at 765, n.4 (citing *Engel v. Teleprompter Corp.*, 732 F.2d 1238 (5th Cir. 1984)).

Additionally, in § 1983 cases, prevailing parties " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust' " *Lefemine v. Wideman*, 568 U.S. 1, 5 (2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

Here, Intervenors did not claim special damages in either of their *Motions to Intervene.* They did, however, request attorney's fees in the prayer of the *Answer* that was filed with the *Amended Motion to Intervene*. While Defendants argue that this was not sufficient notice that Intervenors would attempt to collect attorney's fees from them, the Court disagrees. Intervenors

---

[1] Other jurisdictions follow a more "modern" approach that does not categorize attorney's fees as special damages. 2 James Wm. Moore et al., Moore's Federal Practice – Civil § 9.08 at 3–4 (3d Ed. 2024).

may not have directed the request for attorney's fees toward Defendants, but Defendants would have known that attorney's fees were being requested.

Further, Plaintiffs in this case were not the driving force behind the opposition to lifting the stay; Defendants were. The State of Louisiana, through Attorney General Jeff Landry, filed two oppositions to the *Motions to Intervene* (Doc. 122, Doc. 126), while Plaintiffs only filed a short response (Doc. 121). The Court is more inclined to grant attorney's fees here, as it finds that there are no special circumstances that would support the denial of fees. Defendants were heavily involved in the litigation surrounding whether the stay order would be lifted, and thus should have known that Intervenors would request attorney's fees from them. The Court holds that there was sufficient notice of the request for attorney's fees.

### 4. *Calculation of Fees*

The Fifth Circuit utilizes the "lodestar" method to calculate reasonable attorney's fees. *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994). Under the lodestar analysis, a district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995) (citing *Hensley*, 461 U.S. at 433). The court then determines the "lodestar" by multiplying the reasonable hours expended by the reasonable hourly rates. *Id.* at 324.

The lodestar figure is presumptively reasonable. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). However, "[t]he Supreme Court has twice made clear that 'the most critical factor' in determining the reasonableness of a fee award in a civil rights suit 'is the degree of success obtained.' " *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998) (quoting *Farrar*, 506 U.S. at 114). The

district court may adjust the figure upward or downward after assessing the factors set forth in

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974):

> (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

*Strong v. Bell S. Telecomms., Inc.*, 137 F.3d 844, 850 n.4 (5th Cir. 1998). The Fifth Circuit has "explained that, of the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)). "The lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) (citing *Migis*, 135 F.3d at 1047).

### a.  Reasonable Rate

The Defendants do not challenge the rates that Intervenors billed. The Court, however, will analyze whether the rates set forth in the *Motion for Attorney's Fees* are reasonable. With respect to assessing the reasonableness of hourly rates, the Fifth Circuit recognizes that "the district court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976) (citations omitted). "To determine reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates." *Kellstrom*, 50 F.3d at 328 (citations omitted). An attorney's rate is reasonable only insofar as it is consistent with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and

14

reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). In general, the relevant community is "the community in which the district court sits." *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998) (abrogated on other grounds by *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 610 (2001)). This Court recently held that rates of $228 for an attorney with ten years of experience, $175 for an attorney with four years of experience, and $100 for a paralegal were reasonable for the area. *See Johnson v. Holliday*, No. 15-cv-38, slip op. at 17–19 (M.D. La. Sept. 28, 2023) (deGravelles, J.), Doc. 308.

The rates that Intervenors propose are similar to (and sometimes lower than) the rates that this Court has previously found reasonable. *See id.* At the time the *Motion for Attorney's Fees* was made, Attorney Stanley had 38 years of experience practicing law. (Doc. 141-3 at 1.) Attorney Dossier was a partner who had 11 years of experience. (Doc. 141-4 at 1.) Attorney Paul was a partner who had 10 years of experience. (Doc. 141-5 at 1.) Finally, Attorney D'Avello was an associate who had six years of experience. (Doc. 141-6 at 1.) The hourly rates in this case are as follows: $225 for Attorney Stanley, $175 for other partners who have practiced law between five and ten years, $150 for associates who have practiced law between three and five years, and $75 for paralegals. (Doc. 141-3 at 2.) Attorney Stanley stated in his affidavit that these are below the market rates for the area. (*Id.*) The Court finds that the rates given in the *Motion for Attorney's Fees* are reasonable and will be used in the calculation of the lodestar.

b.  <u>Hours Reasonably Expended</u>

Next, "[t]he district court must determine whether the hours claimed were 'reasonably expended on the litigation.' " *Kellstrom*, 50 F.3d at 324 (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 933–34 (5th Cir.), *vacated on other grounds*, 903 F.2d 352 (5th Cir. 1990)). "In determining

the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Id.* (citation omitted). Local Rule 54 provides specific guidance for determining whether the number of hours claimed is reasonable: "the party desiring to be awarded such fees shall submit to the Court a contemporaneous time report reflecting the date, time involved, and nature of the services performed. The report shall be in both narrative and statistical form and provide hours spent and justification thereof." M.D. La. LR 54(b)(1).

The billing documents and affidavits provided by Intervenors (Doc. 141) are adequate to show the work done by the attorneys in this case, as they give the hours spent working on this case and descriptions of the work done. While the tasks that are documented are reasonable to the Court, the amount of time spent on each task cannot be ascertained in many of the entries. Defendants argue that the award of fees should be reduced due to block billing, as there are several entries in the billing documents that lump multiple discrete tasks together under one total hour calculation.

As a general proposition, attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The fee seeker's attorneys "are charged with proving that they exercised billing judgment." *Id.* at 770. When billing judgment is lacking, the Court must exclude from the lodestar calculation the hours that were not reasonably expended. *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996) (citations and internal quotations omitted) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); see also *Kellstrom*, 50 F.3d at 324 ("[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete.").

"Block-billing is a time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *U.S. ex rel., Cook-Reska v. Cmty. Health Sys., Inc.*, 641 F. App'x 396, 399 n.7 (5th Cir. 2016) (internal quotations and citations omitted) "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation [ . . . because] the court cannot accurately determine the number of hours spent on any particular task . . . ." *Id.* (alteration in original). However, "[a] reduction for block billing is not automatic." *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 9-752, 2011 WL 487754, at *5 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.). "[E]ven a failure to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 n.18 (5th Cir. 2000) (internal citations and quotations omitted). "Therefore, before reducing the fee request based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended." *Fralick*, 2011 WL 487754, at *5.

The Court agrees that Intervenors' counsel block billed and will reduce the hours accordingly. Most of the entries detail the hours that Intervenors' counsel spent on this case in one day, with multiple tasks assigned to one total amount of time. This makes it difficult for the Court to determine how long each task took. To account for potential unreasonableness that may have been found if these entries had not been block billed, the block billed hours will be reduced by a fixed percentage of 15%. *See Johnson v. Holliday*, slip op. at 22 (where this Court held that a 15% reduction in hours for block billing was appropriate).

Attorney Dossier billed a total of 55 hours, 35.50 of which were block billed. The reduction leaves Attorney Dossier with 49.68 hours. Attorney Stanley billed a total of 57.10 hours, 51.4 of

which were block billed. The reduction leaves Attorney Stanley with 49.39 hours. Attorney D'Avello billed a total of 94.4 hours, 88.3 of which were block billed. The reduction leaves Attorney D'Avello with 81.16 hours. Attorney Paul billed a total of 29.1 hours, 28.3 of which were block billed. The reduction leaves Attorney Paul with 24.86 hours. Paralegal Kennedy billed a total of 1.6 hours, .8 of which were block billed. The reduction leaves Paralegal Kennedy with 1.48 hours. These numbers will be used in the lodestar calculation.

c.  <u>Exclusion of Hours from Lodestar</u>

In addition to arguing that Intervenors block billed, Defendants assert that there are four categories of billing that should be excluded from the lodestar.

Defendants first challenge 49.10 hours that were spent preparing the initial *Motion to Intervene*. Defendants argue that, since the *Motion* was so deficient, the time spent preparing it should not be counted in the lodestar calculation. The Court disagrees. The time spent preparing the initial *Motion to Intervene* reflects a week of research and the drafting of a time-sensitive motion. Although the *Motion to Intervene* was denied due to the filing of the *Amended Motion to Intervene*, the *Motion to Partially Lift Stay Order* that was included in the initial *Motion to Intervene* was granted, lifting the stay. Since the *Motion to Intervene* was not defective, as Defendant claims it was, the hours were reasonable.

Next, Defendants challenge 62.5 hours spent preparing the *Amended Motion to Intervene*. This *Motion* included a *Motion for Temporary Restraining Order* that was eventually denied when the stay was lifted. Like the initial *Motion*, the work that was put into the *Amended Motion* included research and writing, while also communicating with the Court. This work is reasonable, as Intervenors were trying a different approach to reach their ultimate goal.

18

Next, Defendants challenge 65.8 hours related to an emergency appeal that never took place. These entries, taking place between July 6, 2022, and July 13, 2022, describe research and meetings about appellate procedure and strategy. (Doc. 141-2 at 3–6.) While the emergency appeal was not needed in the end, it was reasonable for Intervenors' counsel to conduct research and discuss strategy relating to the appeal. The intervention was on a tight deadline, as the time to qualify for the November 2022 election was at the end of July. (Doc. 109-2 at 2.) If this Court had not ruled by the time the deadline was approaching, an emergency appeal might have been needed. Thus, the hours were reasonable.

Finally, Defendants challenge 29.20 hours spent preparing the instant *Motion for Attorney's Fees*. The Fifth Circuit has held that the attorney's fee award may include compensation for time spent litigating the issue of attorney's fees. *Knighton v. Watkins*, 616 F.2d 795, 801 (5th Cir. 1980). Defendants do not have a specific objection as to why the attorney's fees here are unreasonable. Fees related to preparing a *Motion for Attorney's Fees* are allowed in the Fifth Circuit, so the Court finds that these hours are reasonable.

Since all of these hours were reasonable, they will not be deducted from the reasonable hours calculation for the lodestar.

### d.  Calculation of Lodestar

As explained above, the lodestar is calculated by multiplying the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *Kellstrom*, 50 F.3d at 323–24.

Attorney Dossier's reasonable rate was $175 per hour. Her reasonable hours expended were 49.68 hours. Attorney Dossier's total amount is $8,694.00

Attorney Stanley's reasonable rate was $225 per hour. His reasonable hours expended were 49.39 hours. Attorney Stanley's total amount is $11,112.75

Attorney D'Avello's reasonable rate was $150 per hour. His reasonable hours expended were 81.16 hours. Attorney D'Avello's total amount is $12,174.00

Attorney Paul's reasonable rate was $175 per hour. His reasonable hours expended were 24.86 hours. Attorney Paul's total amount is $4,350.50.

Paralegal Kennedy's reasonable rate was $75 per hour. Her reasonable hours expended were 1.48 hours. Paralegal Kennedy's total amount is $111.00.

All of the totals combined equate to $36,442.25. "The lodestar . . . is presumptively reasonable and should be modified only in exceptional cases" *Watkins*, 7 F.3d at 457 (citing *City of Burlington v. Dague*, 505 U.S. 557 (1992)). The *Johnson* factors, set forth above, do not call for an upward or downward adjustment, as even if some of the factors lean in favor of either party,[2] none are exceptional as to warrant an adjustment. *See Perdue*, 559 U.S. at 553 (holding that specific evidence must be presented to warrant an enhancement, which has not been done here.) The Court will not deviate from the lodestar.

## III.    CONCLUSION

Accordingly,

---

[2] The *Johnson* factors cut both ways.  Again, these factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

*Strong*, 137 F.3d at 850 n.4. On the one hand, factors (1), (7), (8), and (9) weigh in favor of adjustment. On the other hand, other factors—(2), (3), and (6)—do not. There are not enough facts in the record to determine if factors (4), (5), (10), or (11) weigh in favor of adjustment.

**IT IS ORDERED** that Intervenor's *Motion for Attorney's Fees* (Doc. 138) is **GRANTED IN PART and DENIED IN PART**. Defendants the State of Louisiana, through Attorney General Jeff Landry, and Secretary of State R. Kyle Ardoin are ordered to pay Intervenors the amount of $36,442.25 in reasonable attorney's fees.

Signed in Baton Rouge, Louisiana, on <u>March 6, 2024</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**